# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Prodigy Network, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 21-10622 (JTD)<br><br>(Jointly Administered)<br><br>**Hearing Date: October 28, 2021 at 10:00 a.m. (ET)**<br>**Obj. Deadline: October 8, 2021 at 4:00 p.m. (ET)** |

## MOTION OF EMILY CAPKANIS FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(D) OF THE BANKRUPTCY CODE

Emily Capkanis ("Movant" or "Plaintiff"), by and through her undersigned counsel, hereby files this Motion, pursuant to sections 105 and 362(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Local Rule 4001-1 of the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") for entry of an order modifying the automatic stay imposed by 11 U.S.C. § 362(d) to allow a pending Employment Action (defined below) to proceed to final judgment. In support of the Motion, Movant respectfully states as follows:

### Preliminary Statement

1. Movant seeks relief from the automatic stay to continue to prosecute an action styled *Emily Capkanis v. Prodigy Networks LLC*, No. 20-cv-07144 (CM) (CWG) (the "Employment Action"), currently pending in the United States District Court for the Southern

---

[1] The Debtors in these cases are the following entities (the respective case numbers for each estate follows in parentheses): 1234 W. Randolph Realty Associates LLC (21-10612-JTD), Prodigy Shorewood Master Rep Fund LLC-1234 W Randolph Series (21- 10613-JTD), 1234 W Randolph Newco, Inc. (21-10614-JTD), Prodigy Shorewood Domestic Feeder Rep Fund LLC-1234 W Randolph Series (21-10615-JTD), 1400 N Orleans Realty Associates LLC (21-10616-JTD), Prodigy Shorewood Master Rep Fund LLC-1400 N. Orleans Series (21-10617-JTD), Prodigy Shorewood Domestic Feeder Rep Fund LLC- 1400 N Orleans Series (21- 10618-JTD), 1400 N Orleans Newco, Inc. (21-10619-JTD), Prodigy Network Miami, LLC (21-10620-JTD), The Assemblage Hospitality, LLC (21-10621-JTD), Prodigy Network, LLC (21-10622-JTD).

District of New York (the "SDNY Court") against Debtor-Defendant Prodigy Networks, LLC. Sufficient cause exists to modify the automatic stay to permit the Employment Action to proceed. Stay relief and continuation of the Employment Action is warranted and necessary because:

   a. The Employment Action is a personal injury tort action that the Court lacks jurisdiction to adjudicate;

   b. The Employment Action is already pending before a court of competent jurisdiction, the SDNY Court;

   c. The litigation in the SDNY Court should resume because that is where the alleged unlawful employment practices complained of occurred;

   d. Absent relief, Movant will be permanently stayed with no possibility of recovery;

   e. Movant seeks to liquidate her claim and receive payment from applicable insurance companies; and

   f. This Court should refrain from taking over the Employment Action, because it does not involve traditional matters of bankruptcy law.

2. Significantly, stay relief and continuation of the Employment Action is warranted because, upon information and belief, there is sufficient insurance coverage for the nature of the claims asserted.

3. A quick review of the balance of harms between Plaintiff and the Trustee demonstrates that allowing the Employment Action to proceed is the appropriate and correct result.

**Jurisdiction**

4. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this Motion in this district in proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

**Relevant Background**

5. On September 9, 2020, Movant commenced the Employment Action against Prodigy in the Southern District of New York. Plaintiff's Complaint alleges that Prodigy's Chief Operating Officer, Vincent Mikolay, made sexual advances against Movant. After Movant complained, Prodigy retaliated by transferring her between multiple positions, significantly hampering her career progress. Movant ultimately suffered a medical crisis for which she requested medical leave. In response, Prodigy fired Movant. Movant sued under the Family and Medical Leave Act, New York Human Rights Law and the New York City Human Rights Law.

6. On September 14, 2020, Movant filed an Amended Complaint in the Employment Action. A true and correct copy of the Amended Complaint is attached hereto as **Exhibit A**.

7. Having received no response or answer to the Amended Complaint, Movant moved for default judgment on February 1, 2021, which the Southern District of New York granted on March 17, 2021 (the "Judgment"). A true and correct copy of the Judgment is attached hereto as **Exhibit B**. The Employment Action subsequently was referred to a Magistrate Judge to conduct an inquest.

8. On March 25, 2021, Prodigy and its affiliated entities (collectively, the "Debtors") each filed a voluntary petition (the "Petition") for relief pursuant to chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). On or about March 26, 2021, Jeoffrey L. Burtch was appointed as chapter 7 trustee (the "Trustee").

9. Upon filing of the Petition, the final aspect of prosecuting the Employment Action was stayed pursuant to section 362(d) of the Bankruptcy Code so Movant's claim against Prodigy remains unliquidated.

10. On April 23, 2021, Movant's counsel in the Employment Action reached out to Debtors' bankruptcy counsel to ascertain whether sufficient insurance coverage exists to compensate Plaintiff for her employer liability claims.

11. To preserve her claim against the Debtors' estates, Movant filed an unliquidated claim against Prodigy on April 28, 2021. Pursuant to Prodigy's filed Schedules of Assets and Liabilities and Statement of Financial Affairs (together, the "Schedules"), Movant's litigation against Prodigy is one of eight (8) concluded or pending. However, the Employment Action is the only case that does not arise from Prodigy's business dealings. All seven (7) of the other cases were brought by former investors or business partners and contain allegations of breach of contract, fraud, conversion or unjust enrichment.

12. On May 4, 2021, Prodigy's counsel informed Movant's counsel there was an Employment Practices Liability Insurance policy (the "Insurance Policy") provided by Great American Insurance Company ("GAIC") in effect at the time of the events described in Movant's Amended Complaint, with a coverage limit of $5,000,000. A true and correct copy of the Insurance Policy is attached hereto as **Exhibit C**. The Insurance Policy generally covers losses from lawsuits and settlements. *See id*. at III.N. However, the Insurance Policy does not cover losses arising from business relationships. For instance, it excludes losses "for, based upon, arising from, or in any way related to any actual or alleged breach of contract or agreement, whether written or oral." *Id*. at IV.J (the "Breach Exclusion").[2] It also excludes losses "brought about or contributed to by . . . any insureds gaining any profit, advantage or

---

[2] Recently, a federal district court in California held that *identical* language was broad enough to cover fraud claims related to a breach of contract. *AKN Holdings, LLC v. Great Am. E & S Ins. Co.*, No. 2:21 Civ. 02216 (SB-E), 2021 WL 2325647, at *4 (C.D. Cal. May 14, 2021). The court so held even though California courts usually construe such exclusions narrowly. *Id.* at *2. In sum, an exclusion containing such language requires only "a minimal causal connection or incidental relationship." *Id.* (citations and quotations omitted).

remuneration to which they were not legally entitled; or "the deliberately fraudulent or criminal acts of any insureds." *Id*. at IV.D (the "Fraud/Enrichment Exclusion.")

13. In correspondence dated August 16, 2021, Movant's counsel reached out to the Trustee, and requested the Trustee stipulate to a modification of the automatic stay to allow Movant to continue the Employment Action. Movant's counsel set forth the basis for their belief, as further described below, that there were no other claims against the Insurance Policy, and that a stipulation would therefore be appropriate. *See* **Exhibit D** attached hereto. The Trustee declined the request to stipulate, however, citing other potential claims that have not yet been identified. *See* **Exhibit E** attached hereto.

14. The deadline to file claims against the Debtors' estates occurred on August 30, 2021.

## Relief Requested

15. By this Motion, Movant seeks relief from the automatic stay for the purpose of continuing the Employment Action to liquidate Plaintiff's claim so Plaintiff may seek recovery primarily from GAIC and, to the extent insurance does not cover the claim in full, participate as a creditor with a liquidated claim against the Debtors and their estates.

## Argument

**I. Cause Exists to Modify the Automatic Stay to Allow Plaintiff to Continue to Adjudicate and Fix Her Employment Claim.**

16. Section 362(d) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for **cause** . . . ." 11 U.S.C. § 362(d)(**emphasis** added). The Bankruptcy Code does not define what constitutes "cause." Instead, cause is determined by the courts on a case-by-case

basis. *In re Rexene Products Co*., 141 B.R. 574, 576 (Bankr. D. Del. 1992) ("<u>Rexene</u>") (citing *In re Fernstrom Storage and Van Co*., 938 F.2d 731, 735 (7th Cir. 1991)). "The legislative history [of section 362] indicates that cause may be established by a single factor such as a desire to permit an action to proceed in another tribunal, or lack of any connection with or interference with the pending bankruptcy case." *Rexene*, 141 B.R. at 576 (internal citations and quotations omitted). The Third Circuit has held that courts should consider the "totality of the circumstances" to determine whether cause exists for relief from the automatic stay. *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997).

17. Courts in this district apply the hardship-balancing test recognized in *Rexene* to determine whether cause exists. That test asks:

   a. whether any **great** prejudice to either the bankrupt estate or the debtor will result from lifting the stay;

   b. the balance of hardships facing the parties, and;

   c. the probable success of the merits if the stay is lifted.

*Rexene,* 141 B.R. at 356 (***emphasis*** added*);* *In re Downey Fin. Corp*., 428 B.R. 595, 609 (Bankr. D. Del. 2010); *In re SCO Group, Inc.*, 395 B.R. 852, 857-58 (Bankr. D. Del. 2007). To establish cause, Movant must show that the "balance of hardships from not obtaining relief tips significantly in [their] favor." *Atl. Marine, Inc. v. Am. Classic Voyages, Co*., 298 B.R. 222, 225 (D. Del. 2003) (internal citation omitted). Application of the facts presented here weighs in Movant's favor on each of the three prongs.

18. Delaware bankruptcy courts also have cited with approval the Second Circuit's multi-factor test set forth in *Sonnax Indus., Inc. v. TRI Component Products Corp*. (*In re Sonnax Indus., Inc*.), 907 F.2d 1280, 1286 (2d Cir. 1990) ("<u>Sonnax</u>") for determining whether stay relief is appropriate. *SCO*, 395 B.R. at 857 (finding cause to lift the stay because the district court case

was ready for trial and both parties had already spent all of the necessary time and resources in preparation). The *Sonnax* factors require a court to consider (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceedings; and (12) impact of the stay on other parties and the balance of the harms. *SCO*, 395 B.R. at 857.

A. **The Employment Actions are Personal Injury Tort Actions that this Court Cannot Adjudicate.**

19. Employment discrimination claims fall within the scope of "personal injury" claims. *See, e.g., Barber v. Arnott (In re Arnott)*, 512 B.R. 744, 753-54 (Bankr. S.D.N.Y. 2014); *Goldschmidt v. Erickson (In re Erickson)*, 330 B.R. 346, 349 (Bankr. D. Conn. 2005) ("[C]laims alleging that a debtor illegally discriminated in employment on the basis of race, creed, disability or sex are personal injury tort claims."). As noted, this Court may not hear, determine and liquidate personal injury tort claims. *In re New York Med. Group, P.C.*, 265 B.R. 408, 412 (Bankr. S.D.N.Y. 2001) (*citing In re U.S. Lines, Inc.,* 1998 WL 382023, at *4 (S.D.N.Y. July 9, 1998)); *Considine v. Schachter (In re Schachter)*, 2007 Bankr. LEXIS 2621, 2007 WL 2238293, at *1 (Bankr. S.D.N.Y. Aug. 1, 2007) ("[B]ankruptcy courts have no power to make factual

determinations regarding personal injury tort claims."). When the bankruptcy court may not liquidate claims, the stay should be modified to permit the action to continue in the original court. *See In re Cooke*, 2007 WL 2102687, at *3 (Bankr. D. Del. July 13, 2007) ("*Cooke*"). The Employment Action must therefore be tried in a non-bankruptcy court, here the SDNY Court. *New York Med. Group*, 265 B.R. at 412-13 (modifying stay to permit medical malpractice claim to be liquidated in state court); *In re Todd Shipyards Corp.,* 92 B.R. 600, 604 (Bankr. D.N.J. 1988) (modifying stay to allow personal injury claimants to proceed with state court action against debtor).[3]

### B. The *Rexene* and *Sonnax* Factors Weigh in Favor of Stay Relief.

20. All of the relevant factors under the *Rexene* three-pronged test and the *Sonnax* factors weigh heavily in favor of lifting the automatic stay to permit continued prosecution of the Employment Action.

*i. The Rexene Three-Prong Test*

a. <u>Neither the Trustee nor the Estates Will be Greatly Prejudiced by Lifting the Automatic Stay</u>.

21. Lifting the automatic stay to allow Movant to liquidate the Employment Action claim is the most efficient and cost effective way to achieve complete resolution of the issues. The SDNY Court is the appropriate forum to adjudicate the Employment Action. *See New York Med. Group*, 265 B.R. at 413 (modifying the stay to allow prepetition litigation to continue where only state court could render a complete judgment). For these reasons, judicial economy and in the interest of achieving complete resolution of the issues raised and the nature of the

---

[3] 28 U.S.C. § 157(d)(5) provides that "The district court shall order that personal injury tort and Personal Injury claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending …." Significantly, § 157(d)(5) applies only to claims that originated in the bankruptcy court, and does not enable the district court to remove personal injury and Personal Injury claims pending as of the petition date in state courts. *In re Dow Corning Corp.*, 1995 WL 495978 (Bankr. E.D. Mich. 1995); *In re U.S. Lines*, 128 B.R. 339, 340 (Bankr. S.D.N.Y. 1991).

Employment Action requires that the claims be decided in the SDNY Court. *In re Larkham*, 31 B.R. 273, 276 (Bankr. D. Vt. 1983); *In re Cooke*, 2007 WL 2102687, at *3 (Bankr. D. Del. July 13, 2007).

22. Movant's situation is exactly the sort considered non-prejudicial by courts to consider the issue. Movant seeks to liquidate a preexisting judgment only in order to proceed against an insurer. Movant would not gain an advantage over other creditors nor deplete the estates, as no proceeds have been paid by GAIC into the estate, and no other claim for a "loss" under the policy is pending, according to the Debtors' Schedules and Statement of Financial Affairs.

23. Each and every type of litigation identified in Prodigy's Schedules is plainly "based upon, arising from, or related to" a breach of contract, and therefore not covered. They each involve plaintiffs complaining about Prodigy's failure to perform on contracts, or torts arising from such breaches. Many claims are further covered by the Enrichment/Fraud Exclusion.

- Several of these complaints allege only simple breaches of subscription agreement contracts with Prodigy. *See Avemar 2318 Corp. v. Prodigy Network, LLC, and Prodigy Shorewood Domestic Feeder Rep Fund, LLC*, 655357/2019 (NY Sup. Ct. 2019) **Exhibit F** at ¶ 26; *Denimal v, Prodigy Network, LLC*, 20 Civ. 00968 (MKV) (SDNY 2020), **Exhibit G** at ¶ 43; *Haua v. Prodigy Network, LLC*, 20 Civ. 02318 (PGG) (KNF) (SDNY 2020), **Exhibit H** at ¶ 28. These claims are all clearly covered by the Beach Exclusion.

- *Cowley Holdings Services Inc.v. Prodigy Network, LLC*, 652617/2020 (NY Sup. Ct. 2020): Investors in subscription agreements with Prodigy sued for Breach of Contract (Count I), Conversion (Count II), Common Law Fraud (Count III), and Unjust Enrichment (Count IV). Each alleged tort plainly arises from the failure of the investment contract at issue. *See* **Exhibit I** at ¶¶ 49, 56, 61, 64. These are all covered by the Breach Exclusion. Moreover, Counts II-IV are covered by the Enrichment/Fraud Exclusion.

- *Jailinelli Ltd. v. Prodigy Network, LLC*, 20 Civ. 02906 (ER) (SDNY 2020): Investors in a subscription agreement with Prodigy alleged Breach of Contract (Count I), Conversion (Count II), and Fraud (Count III). The Breach Exclusion covers Count I, and the Breach Exclusion covers Counts II and III as well, because they are both related to failures to honor contractual duties. *See* **Exhibit J** at ¶¶ 47, 48 56. Moreover, the Enrichment/Fraud Exclusion covers Counts II and III.

- *Operadora Kau-Kan v. Prodigy Network, LLC*, 20 Civ. 02770 (ALC) (SDNY 2020): Investors in a subscription agreement with Prodigy allege Breach of Contract (Count I), Fraud (Counts II, III, V, VI) and Conversion (Count IV). All of these Counts are related to Prodigy's breach of the subscription agreement. *See* **Exhibit K** at ¶¶ 41, 51, 61, 65, 77, 87. They are covered by the Breach Exclusion. Moreover, the Enrichment/Fraud Exclusion covers Counts II-VI.

24. Further, an inquest in the SDNY Court will not require the Trustee to engage in expensive litigation. The Debtors have already defaulted in the Employment Action, and the subsequent action against the insurer would lie only against GAIC. Moreover, as the court found in *In re Downey Fin. Corp.*, even if there were another claim (and, again, there is no indication that there is), the policy has a limit of $5,000,000, more than enough to satisfy multiple judgments, if necessary. There has been no indication to date that there are any other potential claims against the Insurance Policy. There is thus no prejudice to the estates nor to any other creditors.

25. Finally, policy concerns mandate modification of the automatic stay in this case. In enacting the Bankruptcy Code, Congress noted that while the automatic stay had broad application "it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties in their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." *In re Holtkamp*, 669 F.2d 505, 508 (7th Cir. 1982) (citing S. Rep. No 989, 95th

Cong., 2d Sess. 50 *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836). Here, where it would increase efficiency to have the claims against the Debtors heard in the SDNY Court where those claims were originally brought and where no prejudice to the bankruptcy estate would result from modifying the stay to allow the Employment Action to continue in the SDNY Court, public policy dictates that the Court modify the automatic stay.

26. In contrast, the Trustee will not be greatly prejudiced if the stay is lifted. This bankruptcy case is a chapter 7 liquidation, which likely provides no meaningful recovery to general unsecured creditors. Permitting the Employment Action to proceed will not impose material costs on the Trustee or these estates.

        b. <u>The Balance of Hardships Favors Stay Relief</u>.

27. Because Movant's claim fits the archetypal situation of a creditor seeking to proceed against an insurer, "[t]he other two prongs of the balancing test . . . merit little additional discussion." *Matter of Fernstrom Storage & Van Co.*, 938 F.2d at 736. In any case, the second prong asks "[w]hether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor." *In re Trib. Co.*, 418 B.R. at 126.

28. Modifying the stay to allow the Employment Action to continue would be the most efficient and cost-effective way to achieve complete resolution of the issues raised in that case. Only the SDNY Court may liquidate the judgment entered in the Employment Action. *See New York Med. Group*, 265 B.R. at 413 (modifying the stay to allow prepetition litigation to continue where only state court could render a complete judgment). For these reasons, judicial economy and the interest in achieving complete resolution of the issues raised by the Employment Action requires that the claims be decided in the SDNY Court, a court of competent jurisdiction. *In re Larkham*, 31 B.R. 273, 276 (Bankr. D. Vt. 1983) (lifting stay to allow

continuation of employment discrimination case); *Cooke*, 2007 WL 2102687, at *3. Absent the relief requested by this Motion, Movant will be permanently stayed, receive nothing on account of her claim and will not be able to proceed against applicable insurance.

29. The automatic stay should be modified where the purposes of section 362(a) of the Bankruptcy Code—"protect[ing] property that may be necessary for the debtor's fresh start and . . . provid[ing] breathing space to permit the debtor to focus on its rehabilitation or reorganization . . . [and] prevent[ing] the dismemberment of a debtor's assets by individual creditors levying on the property"[4] would not be served by leaving the stay in effect. *See, e.g., American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 152 B.R. 420, 426 (D. Del. 1993) (finding cause existed to lift the automatic stay to permit movant to file motion in federal district court). In this case, enforcing the automatic stay would not promote any of these policies. As discussed above, the Employment Action will not dismember the Debtors' estates because Movant will look principally/entirely to the insurance proceeds for any recovery.

30. As discussed, there is no conceivable harm to the Trustee or to the estates. Indeed, to the extent Movant's claim will be satisfied by the GAIC, lifting the stay will actually inure to the estates' benefit, as it will likely reduce the amount of Movant's claim.[5]

31. By contrast, Movant would be forced to litigate her claim in United States District Court for the District of Delaware given this Court's lack of jurisdiction to hear personal injury tort actions. Prong (2) clearly lies in favor of Capkanis.

    c. <u>There is a Strong Likelihood Plaintiff will Prevail on the Merits.</u>

32. The final prong of the analysis is satisfied by "even a slight probability of success on the merits . . . ." *In re Continental Airlines*, 152 B.R. at 425; *see also Rexene Products*, 141

---

[4] 3 COLLIER ON BANKRUPTCY ¶ 362.03, at 362-13 (15th ed. rev. 2006).
[5] The policy has a retention, *i.e.* a deductible, of $150,000.00, for each employment practices claim. *See* Exhibit C at 1. Capkanis' claim may remain outstanding to at least that extent following a potential action against the insurer.

B.R. at 578. The SDNY Court has entered the Judgment against Prodigy. The remaining step, of an inquest, does not go to the merits of the claim at all, but only decides the extent of damages. The final prong clearly lies in favor of Movant. Seeking to set aside the Judgment would not provide any benefit to the estates' or the Debtors' creditors, and would be an inefficient use of Trustee's limited resources. Accordingly, there is a strong likelihood that Movant's judgment against Prodigy will not be challenged.

    ii. *The Sonnax Factors*.

33. As set forth below, Movant satisfies each of the *Sonnax* Factors. Accordingly, the Court should lift the stay to allow Movant to continue prosecuting the Employment Action.

- **Complete Resolution of Issues in SDNY Court**. The SDNY Court is a court of competent jurisdiction that can provide complete relief. Default Judgment already has been entered in the SDNY Court, and the Employment Action has been referred to a Magistrate Judge for an inquest.

- **The Employment Action has Little or No Connection or Interference with Bankruptcy Cases**. The continuation of the Employment Action in the SDNY Court for the purpose of liquidating Movant's claim will not interfere with bankruptcy cases.

- **The Employment Action Does Not Assert Claims for Breach of Fiduciary Duty**. The Employment Action does not concern any alleged breach of fiduciary duty by the Debtors.

- **The SDNY Court is the Correct Tribunal to Adjudicate the Employment Action**. The SDNY Court was, and is, the correct forum in which to bring the Employment Action. The Employment Action has nothing to do with bankruptcy law, and the misconduct alleged in the Amended Complaint occurred in New York. Further, prior to being stayed, a Magistrate Judge was assigned to conduct an inquest to liquidate Movant's judgment.

- **Insurance**. Upon information and belief, the Debtors have insurance available to compensate Movant on account of her claims.

- **The Employment Action Does Not Involve Third Parties**. The Employment Action does not involve third parties, except that Movant primarily seeks recovery from the Debtors' insurance carrier.

- **No Prejudice to other Creditors.** Continuation of the Employment Action will not prejudice other creditors of the Debtors because Movant primarily seeks recovery on her claims from available insurance proceeds, which general unsecured creditors do not have any claim to.

- **The Judgment Entered in the Employment Action is Not Subject to Equitable Subordination.** The Employment Action asserted by the Movant is not subject to equitable subordination.

- **The Movant's Success Will Not Result in a Judicial Lien Avoidable by the Trustee.**

- **Lifting the Automatic Stay is in the Interests of Justice and the Expeditious and Economical Resolution of Litigation.** Allowing the Employment Action to proceed also is in the interest of justice because that allows Movant to seek damages for alleged wrongs.

- **A Trial is Not Required**. The SDNY Court has entered a judgment against the Debtors, and the Employment Action has been referred to an inquest. Accordingly, no trial is necessary, and all that remains is determination of the dollar amount of Movant's claims.

- **Impact of Stay Relief on Other Parties and Balance of Harms** The balance of harms weighs heavily in favor of relief from the automatic stay. If the stay is not lifted, the Movant lacks a tribunal that can fix her claim. Without a fixed claim, Movant cannot receive compensation in whole or part from the Insurance Policy. The Debtors and the Trustee will not be greatly prejudiced by stay relief because general unsecured creditors have no claim to the Insurance Policy.

- **Chapter 7 Provides No Meaningful Recompense to Plaintiffs**. Creditors in a chapter 7 bankruptcy rarely receive distributions on account of their allowed claims. If they do, the amount is nominal compared to their claim. Insurance is the only source of meaningful recovery available to Movant. Without the relief requested by this Motion, Movant likely will receive nothing.

- **Lifting the Automatic Stay Promotes Judicial Economy**. Relief from the automatic stay will ensure judicial economy and allow the most efficient and expeditious resolution of the Movant's claims. Bankruptcy courts frequently have lifted the automatic stay to allow prepetition litigation to continue. *See Packerland Packing Co. v. Giffith Brokerage Co*. (*In re Kemble*), 776 F.2d 802, 807 (9th Cir. 1985) (affirming decision to modify the stay where trial was pending); *Crown Heights Jewish Community Council v. Fischer* (*In re Fischer*), 202 B.R. 341, 355 (E.D.N.Y. 1996) (granting stay relief to allow civil RICO claims to proceed where discovery was near completion); *Rexene*, 141 B.R. at 574 (granting relief from stay where document discovery had been completed and only a few depositions remained).

## II. New York Law Permits Movant to Proceed Directly Against GAIC, but Her Judgment in the Federal Action must First be Liquidated through an Inquest

34. Under New York law, Movant has a right to proceed directly against the insurer, GAIC under the terms of GAIC's Employment Practices Liability Insurance ("EPLI") contract with Prodigy, regardless of the bankruptcy of Prodigy. *See* NYIL § 3420(b). However, the NYIL requires that the injured party first obtain a judgment against the insured. NYIL § 3420(b)(1). *See Sw. Marine & Gen. Ins. Co. v. Preferred Contractors Ins. Co.*, 50 N.Y.S.3d 28 (N.Y. Sup. Ct. 2016) ("The orders granting the plaintiffs' motions seeking a judgment of default on liability that were obtained by ExxonMobil, Roux and SoilSolution against Gilmar are not money judgments"); *accord National Union Fire Ins. Co. of Pittsburgh, Pa. v. State of New York*, 72 AD3d 620, 621 (1st Dept 2010) (in dicta, explaining that an order of inquest did not satisfy judgment requirement of NYIL). Thus, before proceeding against the insurer under the NYIL, Movant must proceed to an inquest on her federal claim and reduce the judgment to a final, money judgment.[6]

35. Movant expressly reserves all rights against all other parties, including the right to take discovery based on any objection received.

## CONCLUSION

**WHEREFORE**, for the forgoing reasons, Movant respectfully requests the entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit L**, lifting the automatic stay imposed by section 362(a) of the Bankruptcy Code to allow Movant to continue

---

[6] The policy and state law also provide that an action against the insurer cannot proceed "during a stay or limited stay of execution against the insured." *See* Ex. C, IX.A. *See also Knox v. Ironshore Indem. Inc.*, No. 20CV4401 (DLC), 2021 WL 256948, at *3 (S.D.N.Y. Jan. 26, 2021) (explaining that the New York Insurance Law does not permit the action against the insurer to continue when a stay against the estate remains in place). Movant thus seeks a permanent lifting of the stay, but only for the purpose of proceeding against the insurer.

the prosecution of the Employment Action and granting such other and further relief as this Court deems just and proper.

Dated: September 24, 2021
      Wilmington, Delaware

Respectfully submitted,

**THE ROSNER LAW GROUP LLC**

*/s/ Jason A. Gibson*
Frederick B. Rosner (DE 3995)
Jason A. Gibson (DE 6091)
824 N. Market Street, Suite 810
Wilmington, DE 19801
Tel.: (302) 777-1111
Email: rosner@teamrosner.com
        gibson@teamrosner.com

and

**WIGDOR LLP**
Valdi Licul
John S. Crain
85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com
jcrain@wigdorlaw.com

*Counsel for Creditor Emily Capkanis*