# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Prodigy Network, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 7<br><br>Case No. 21-10622 (JTD)<br><br>(Jointly Administered)<br><br>**Related Docket Nos. 69 and 89** |

## RENEWED AND SUPPLEMENTAL OBJECTION TO TRUSTEE'S MOTION FOR ENTRY OF (I) AN ORDER (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH SALE OF ESTATE ASSETS, (B) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE PROPOSED SALE, AND (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (II) AN ORDER (A) APPROVING THE SALE AND (B) GRANTING CERTAIN RELATED RELIEF

**COMES NOW**, all Claimants listed on attached **Exhibit 1** (collectively, the "**Claimants**"), by and through undersigned counsel, and hereby renew their objection to *Trustee's Motion for Entry of (I) an Order (A) Approving Bidding Procedures In Connection With Sale of Estate Assets, (B) Scheduling an Auction and Hearing to Consider the Proposed Sale, and (C) Approving the Form and Manner of Notice Thereof; and (II) an Order (A) Approving the Sale and (B) Granting Certain Related Relief* [Docket No. 69] (the "**Motion**") as follows:

1. The instant cases were filed on March 25, 2021. Juanita Galvis as managing member signed the schedules and authorized such filings.

2. Jeoffrey L. Burtch was appointed Chapter 7 Trustee (the "**Trustee**") on March 26, 2021.

---

[1] The Debtors in these cases are the following entities (the respective case numbers for each estate follows in parentheses): 1234 W. Randolph Realty Associates LLC (21-10612-JTD), Prodigy Shorewood Master Rep Fund LLC-1234 W Randolph Series (21-10613-JTD), 1234 W Randolph Newco, Inc. (21-10614-JTD), Prodigy Shorewood Domestic Feeder Rep Fund LLC-1234 W Randolph Series (21-10615-JTD), 1400 N Orleans Realty Associates LLC (21-10616-JTD), Prodigy Shorewood Master Rep Fund LLC-1400 N. Orleans Series (21-10617-JTD), Prodigy Shorewood Domestic Feeder Rep Fund LLC- 1400 N Orleans Series (21-10618-JTD), 1400 N Orleans Newco, Inc. (21-10619-JTD), Prodigy Network Miami, LLC (21-10620-JTD), The Assemblage Hospitality, LLC (21-10621-JTD), Prodigy Network, LLC (21-10622-JTD).

3. Debtor 1400 N Orleans Realty Associates LLC ("**1400 Associates**") owns ninety percent (90%) of the membership interests in non-debtor 1400 N Orleans JV LLC ("**1400 JV**"). 1400 Associates' interest in 1400 JV will be referred to as the "**1400 Interest**."

4. The remaining ten percent (10%) of the membership interest in 1400 JV is owned by 1400 North Orleans Sponsor LLC ("**1400 Sponsor**"). 1400 Sponsor is an affiliate of DDG, a real estate investment and development firm and Marc Realty Capital, a real estate development firm.

5. 1400 JV's managing member (and holder of a zero percent (0%) membership interest) is 1400 North Orleans Promote LLC, which is also an affiliate of DDG and Marc Realty Capital.

6. 1400 JV is the sole member of 1400 N Orleans Property Company LLC ("**1400 Titleholder**"), which is owner of commercial real property located at 1400 North Orleans Street in the Old Town neighborhood of Chicago, Illinois (the "**1400 Property**").

7. In essence, Debtor 1400 Associates owns 90% of 1400 JV which owns 100% of a vacant commercial piece of property purchased for $14,423,335.00 in 2019.

8. The Trustee is attempting to sell the 1400 Property for $2,250,000.00.

9. In his *Motion for Order to Shorten Time for Notice of the Hearing on, and the Deadline to Respond to, Trustee's Motion for Entry of (I) an Order (A) Approving Bidding Procedures in Connection With Sale of Substantially All of the Estate's Assets, (B) Scheduling an Auction and Hearing to Consider the Proposed Sale, and (C) Approving the Form and Manner of Notice Thereof; and (II) an Order (A) Approving the Sale and (B) Granting Certain Related Relief* [Docket No. 70] (the "**Sale Motion**"), the Trustee asserts that in the six (6) months since case filing only one offer to purchase the 1400 Property has been made and that such offer, by 1400 Sponsor, is in good faith and is in the best interest of the bankruptcy estate.

10. Claimants herein previously filed an objection to the proposed Sale as well as the process and timing thereto. Subsequent to the previous objection, Claimants have been provided with new and alarming evidence that should make this Court question whether or not 1400 Sponsor can ever be considered a good faith purchaser nor whether the instant sale process should move forward at all.[2]

## "STACKING THE DECK"

11. Ten (10) days prior to filing bankruptcy, all the members of 1400 JV agreed to and entered into an agreement titled *First Amendment To Limited Liability Company Agreement* (the "**Amended Agreement**"). The sole result of this amendment was to make the 90% interest in 1400 JV unattractive to any potential buyers and to assist 1400 Sponsor in obtaining the entire 1400 JV interest for themselves. *See* attached **Exhibit A**.

12. This Amended Agreement substantially and critically amended the original *Limited Liability Company Agreement* entered into on December 27, 2018. *See* attached **Exhibit B**.

13. The Amended Agreement was signed ten (10) days prior to the filing of the instant bankruptcy. It is virtually impossible that the Amended Agreement was prepared and contemplated in a vacuum without knowledge of the upcoming bankruptcy filings. The same individual who authorized the bankruptcy filing signed off on the Amended Agreement *i.e.*, Juanita Galvis. Thus, all members of 1400 JV colluded on an amendment which, as described below, materially altered the member rights of Debtor 1400 Associates.

14. The amendments made specific and critical changes to section 3.5 **Member Consent Rights**. This section created a list of acts or transactions which required the written

---

[2] Claimants herein focus on the sale of assets from the 1400 N Orleans Realty Associates LLC (21-10616-JTD) as such values are much greater than the sale of the option within case Debtor 1234 W Randolph Realty Associates LLC Case No. (21-10612-JTD) and the issues much larger. Nothing contained herein should be considered tacit acceptance that such sale, to the same affiliates, is acceptable nor reasonable.

consent of all members of 1400 JV.  Since Debtor 1400 Associates was not the managing member, despite owning ninety percent (90%) of the membership interests and providing one hundred percent (100%) of the investment capital, this section ostensibly gave 1400 Associates some control over how the entity conducted business and what it could and/or could not do.  Through the amendment, Debtor 1400 Associates *no longer* has the ability to prevent the Managing Member from selling the entity, conveying all its assets away, issuing equity-like securities, approving any Annual Budget and Business Plan or calling for capital contributions.  Attached hereto as **Exhibit C** is a marked-up version of the full list of the rights given away in the amended section 3.5.

15. The effect of such an amendment essentially took away any ability for Debtor 1400 Associates to control or even participate in the running and management of 1400 JV.  It is alleged and therefor believed that this was done so with full knowledge of the upcoming bankruptcy and to make the ninety percent (90%) interest unmarketable to anyone but the purchaser herein *i.e.*, 1400 Sponsor.

16. The transfer itself appears to be a fraudulent transfer as no identifiable consideration was given to Debtor 1400 associates for the transfer/waiving of such rights.

17. Without the Trustee seeking to avoid such a transfer, potentially under § 548, the Trustee is left in a virtually powerless position within the 1400 JV.  The deck has thus been "stacked" against the Trustee from day one.

18. The transfer additionally has made the ninety percent (90%) interest virtually unmarketable.

## LACK OF DISCLOSURE

19. To date, little to no information has been provided as to the Trustee's efforts to market and/or sell such interests nor does the Sale Motion provide for marketing and/or advertising in the future as part of the auction process.

20. The Sale Motion itself fails to address nor even mention the amendment to the operating agreement nor the potential fraudulent transfer issue. No depositions on these issues have occurred nor is undersigned counsel aware of any being scheduled in future. DDG and Marc Realty Capital were both involved with the Debtor prior to the bankruptcy filing and it is unknown what sort of investigation, if any, the Trustee has undertaken of such entities. It is unknown and not disclosed in the Trustee's Motion if either DDG or Marc Realty Capital are being investigated in the future or whether the Estate holds any claims against them. Attached hereto as **Exhibit D** is marketing material previously used by Debtor explicitly describing the relationship with DDG and Marc Realty Capital.

21. More importantly, no appraisal of the property has been presented to the Court which would justify the massive decrease in value since 2019. The raw land was purchased for approximately $14.4 million, *almost $12 million dollars more than the offer of purchase herein*.

## LEGAL ARGUMENT

22. Section 363 of the Bankruptcy Code allows the Chapter 7 Trustee "after notice and a hearing [to] use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). In order for the proposed sale to be proper, the Chapter 7 Trustee must "satisfy [his] fiduciary duty to the debtor, creditors and equity holders, [by articulating some] business justification for using, selling, or leasing the property outside the ordinary course of business." *See Sheehan v. Dobin*, 2011 U.S. Dist. LEXIS 46004, at *6-7 (D.N.J. Apr. 28, 2011) (quoting *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)); *In re Antunes*, No. 15-16553-MDC, 2019 Bankr. LEXIS 542, at *23 (Bankr. E.D. Pa. Feb. 19, 2019).

23. The standard under §363(b) relatively clear — a debtor may sell assets outside the ordinary course of business when it has demonstrated that the sale of such assets represents the sound exercise of business judgment. *In re Elpida Memory, Inc.*, 2012 Bankr. LEXIS 5367, at *17

(Bankr. D. Del. Nov. 16, 2012). "In determining whether a sale satisfies this standard, the courts in this Circuit require that a sale satisfy four considerations: (1) a sound business purpose exists for the sale; (2) the sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the purchaser has acted in good faith. *Id*. Moreover, great judicial deference is given to the Chapter 7 Trustee's exercise of his business judgment. *Sheehan*, 2011 U.S. Dist. LEXIS 46004, at *6-7 (citing *In re Gulf States Steel*, 285 B.R. 497, 516 (Bankr. N.D. Ala.2002)). The Court should accept the Chapter 7 Trustee's business judgment, unless there is evidence of bad faith. *In re Shubh Hotels Pittsburgh, LLC,* 439 B.R. 637, 639 (Bankr. W.D. Pa. 2010). In reviewing the Chapter 7 Trustee's exercise of his business judgment, the Court looks at whether the proposed transaction (1) represents a business decision, (2) is made with disinterestedness, (3) is made with due care, (4) is made in good faith, and (5) does not constitute an abuse of discretion or waste of assets. *Id*. (citing *In re Adelphia Communications Corp.*, 2004 Bankr. LEXIS 971 (Bankr. S.D.N.Y. June 22, 2004))." *In re Antunes*, No. 15-16553-MDC, 2019 Bankr. LEXIS 542, at *23-24 (Bankr. E.D. Pa. Feb. 19, 2019).

24. Trustee readily appears to admit that his own information may not be accurate. Footnote 2 on page 3 of the Sale Motion states "the information provided herein is based on certain of the Debtor's records that have been provided to the Trustee. The Trustee makes no representations or warranties regarding the accuracy of any of the information regarding the Purchased Assets set forth in this Motion or any attachments." If this Court cannot rely upon the accuracy of Trustee's statements regarding the assets being purchased, it would ostensibly be impossible for this Court to allow the requested sale to be approved.

25. Considering the above criteria, Claimants would argue that sound business judgment is not being made herein by the Trustee nor does the sale satisfy the standards for a 363 sale. Issues laid out above are clear and uncontroverted and the proposed transaction raises huge

red flags. Claimants allege that: (i) the sale price is not fair; (ii) no evidence has been presented which supports the emergency nature of the sale; and (iii) the purchaser created an environment which essentially devalued the asset and created a potential fraudulent transfer. Further, while the case has been open for 6 months no evidence of ANY marketing or alternatives to selling the ninety percent (90%) interest have been undertaken. The instant sale is arguably either an abuse of discretion or a waste of assets. The Trustee's ability to negotiate with the managing member of 1400 JV about a sale of the entire property would have been a fair exchange and hypothetically brought in the most money had the Trustee been able to effectuate such a transaction. The sale of only the 90% interest benefits only one party, the purchase 1400 Sponsor.

**WHEREFORE**, Claimants respectfully request the Court not approve the sale of assets described herein and/or require the Trustee to market the property concurrently with an investigation of potential fraudulent transfers and for such other relief as may be just.

Dated: October 26, 2021
Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ William E. Chipman, Jr.*
William E. Chipman, Jr. (No. 3818)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
Email: chipman@chipmanbrown.com

—and—

**RAPPAPORT OSBOURNE & RAPPAPORT, PLLC**
Jordan L. Rappaport (Admitted *Pro Hac Vice*)
Suite 203, Squires Building
1300 North Federal Highway
Boca Raton, Florida 33432
Telephone: (561) 368-2200
Email: office@rorlawfirm.com

*Counsel to the Claimants*