# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into by Jeoffrey L. Burtch, solely in his capacity as the Chapter 7 trustee (the "Trustee") for the Prodigy Debtors (as defined below) and Great American Insurance Company (as defined below, "Great American"). The Trustee and Great American are collectively referred to herein as the "Parties."

## RECITALS

**WHEREAS**, on March 25, 2021, the Prodigy Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases are jointly administered under *In re Prodigy Network, LLC*, Case No. 21-10622-JTD (the "Bankruptcy Cases"); and

**WHEREAS**, the Trustee was appointed to serve as the Chapter 7 trustee of the Bankruptcy Cases and the Prodigy Debtors' chapter 7 bankruptcy estates; and

**WHEREAS**, Great American (defined below) issued Private Equity Liability Insurance Policy No. PEP2788734 (the "Policy") to Prodigy Shorewood Investment Management LLC, effective for the Policy Period from September 6, 2018 to September 6, 2019. The Policy Period was subsequently extended to September 6, 2023. Subject to all of its terms, conditions, and limitations, the Policy affords up to a maximum aggregate Limit of Liability of $5,000,000 for all Loss (including Costs of Defense), subject to the applicable Retention; and[1]

**WHEREAS**, as defined in the Policy, Insured Organizations include, without limitation, approximately 65 organizations identified in the Insured Organization Schedule, including the Prodigy Debtors (the "Insured Organizations"), and Insured Persons include "any natural person who was, is or shall become a director, officer, general partner, manager, equivalent executive or employee of an Insured Organization" (the "Insured Persons," and together with the Insured Organizations and any other Persons entitled to coverage under the Policy, the "Insureds" and each individually, an "Insured "); and

**WHEREAS**, prior to filing the Bankruptcy Cases, the Prodigy Debtors engaged in investment crowdfunding, real estate development, and property management; and

**WHEREAS**, numerous claims, including lawsuits, were asserted against the Prodigy Debtors both before and after the Bankruptcy Cases were filed, including without limitation more than 2,000 proofs of claim that will be resolved in the Bankruptcy Cases (collectively, the "Claims Against Prodigy"); and

**WHEREAS**, the Trustee threatened to bring litigation claims against multiple Insured Persons for various alleged wrongful acts and omissions with regard to the Prodigy Debtors (the "D&O Claims"); and

---

[1] The Limit of Liability has been partially exhausted through payments made under the Policy.

**WHEREAS**, the Trustee has asserted that Great American is obligated under the Policy to provide coverage for the Claims Against Prodigy and D&O Claims; and

**WHEREAS**, the Parties desire to resolve, on the terms set forth in this Agreement, any and all disputes and issues between them regarding all past, present, and future claims, rights or obligations under or with respect to the Policy related in any way to the Prodigy Debtors and/or other Insureds, including without limitation the Claims Against Prodigy and D&O Claims, past, present, or future, known or unknown, which have been brought, could have been brought, or may be brought in the future by or against the Prodigy Debtors, any Insured Organization, and/or or any Insured Person, under or with respect to the Policy; and

**WHEREAS**, the Trustee and Great American participated in extensive settlement negotiations and exchanges of information, including a lengthy mediation leading to this Agreement. The mediation was presided over by Peter H. Woodin, an experienced JAMS mediator with extensive experience in complex insurance matters. The Parties fully and freely consent to this Agreement and each of the provisions set forth herein, and believe that this Agreement is fair and equitable and in the best interest of each Party, each Insured, and, in the case of the Trustee, in the best interest of the Prodigy Debtors' bankruptcy estates, creditors and parties in interest; and

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein, the sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, subject to the approval of the Bankruptcy Court, the Parties do hereby agree as follows:

## AGREEMENT

## I.     DEFINITIONS

All capitalized terms in this Agreement shall have the meanings set forth below, unless otherwise defined herein. Each defined term stated in the singular shall include the plural and each defined term stated in the plural shall include the singular as the context warrants. The word "including" means "including but not limited to."

1.0     "Approval Motion" means the motion to be filed by the Trustee in the Bankruptcy Cases pursuant to, *inter alia*, sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, seeking entry of the Approval Order.

1.1     "Approval Order" means an order by the Bankruptcy Court approving this Agreement pursuant to Bankruptcy Rule 9019 and the sale by the Trustee to Great American of the Policy pursuant to sections 363 and 105 of the Bankruptcy Code, in a form mutually agreeable to the Parties, or as may be modified by agreement of the Parties subject to Section XI of this Agreement.

1.2     "Bankruptcy Code" means the laws of the United States relating to bankruptcy or reorganization, including, without limitation, Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended, but only as applicable to the Bankruptcy Cases. Unless otherwise indicated herein, references to sections of the Bankruptcy Code shall refer to sections of Title 11 of the United States Code.

1.3 "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or such other court that assumes jurisdiction over the Bankruptcy Cases.

1.4 "Bankruptcy Rule" means a rule contained in the Federal Rules of Bankruptcy Procedure, as amended, but only as applicable to the Bankruptcy Cases.

1.5 "Capkanis Lawsuit" means the lawsuit filed by Emily Capkanis styled *Capkanis v. Prodigy Network LLC*, 20 Civ. 07144 (CM) (GWG) in the Southern District of New York.

1.6 "Capkanis Settlement" means the settlement agreement between the Trustee and Emily Capkanis resolving the Capkanis Lawsuit.

1.7 "Claim" means any past, present, or future claim, demand, action, cause of action, suit or liability of any kind or nature whatsoever, whether at law or in equity, known or unknown, asserted or unasserted, anticipated or unanticipated, accrued or unaccrued, fixed or contingent, which has been or may be asserted by or on behalf of any Person, seeking monetary relief, damages (including compensatory, punitive, exemplary or extra-contractual damages) or equitable, mandatory, injunctive, or any other type of relief, including without limitation cross-claims, counterclaims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, actions, rights, requests, causes of action, orders, any alleged breach of the duty of good faith and fair dealing, unfair claims practices, unfair trade practices, bad faith, actual or constructive fraud, misrepresentation, insurer misconduct, misfeasance and/or malfeasance, violations of any statute (other than criminal violations), regulation or code, or any other type of extra-contractual liability or alleged wrongdoing.

1.8 "Claimant" means any person or entity who has asserted, could have asserted, or in the future may be entitled to assert, a Released Claim.

1.9 "Great American" means Great American Insurance Company and: (i) all of its past, present, and future parents, subsidiaries, affiliates, divisions, and joint ventures; (ii) each of the past, present, and future employees, officers, directors, principals, agents, representatives, shareholders, and attorneys of any of the foregoing acting in their capacities as such; and (iii) the predecessors, successors, and assigns of all the above in their capacities as such.

1.10 "Execution Date" means the last date on which this Agreement was executed by all Parties.

1.11 "Final Order" means an order or judgment of any court of competent jurisdiction the operation or effect of which is not stayed, and as to such order or judgment the time to appeal, petition for certiorari, seek review, reargument, rehearing or modification has expired (except under F.R. Civ. P. 60) and as to which no appeal, petition for review, certiorari or reargument or rehearing was filed or, if filed, does not remain pending.

1.12 "Final Approval Order Date" means the date on which the Approval Order becomes a Final Order.

1.13 "Person" means any natural or legal entity or person, including an individual, a corporation, a partnership, a joint venture, an association, a trust, an estate, a trustee, any other entity or organization, any federal, state or local government or any governmental or quasi-governmental body, unit or agency or political subdivision or any agency, department, board or instrumentality thereof, the United States Trustee, or any agent or representative of the foregoing.

1.14 "Prodigy Debtors" means the following entities (the respective bankruptcy case number for each Debtor follows in parentheses): 1234 W. Randolph Realty Associates LLC (21-10612-JTD), Prodigy Shorewood Master Rep Fund LLC-1234 W Randolph Series (21-10613-JTD), 1234 W Randolph Newco, Inc. (21-10614-JTD), Prodigy Shorewood Domestic Feeder Rep Fund LLC-1234 W Randolph Series (21-10615-JTD), 1400 N Orleans Realty Associates LLC (21-10616-JTD), Prodigy Shorewood Master Rep Fund LLC-1400 N. Orleans Series (21-10617-JTD), Prodigy Shorewood Domestic Feeder Rep Fund LLC- 1400 N Orleans Series (21-10618-JTD), 1400 N Orleans Newco, Inc. (21-10619-JTD), Prodigy Network Miami, LLC (21-10620-JTD), The Assemblage Hospitality, LLC (21-10621-JTD), Prodigy Network, LLC (21-10622-JTD).

1.15 "Released Claim" or "Released Claims" means any liquidated or unliquidated Claim by any Person (i) against the Prodigy Debtors and/or any other Insured, Insured Organization, or Insured Person, (ii) against Great American as a result of or related in any way to its insurance relationship with any Insured under the Policy, and/or (iii) to or under the Policy or its proceeds, including without limitation any and all rights to coverage or other direct or indirect recovery under or from the Policy, whether in the nature of or sounding in tort, contract, extracontractual, warranty, or any other theory of liability in law, statute, common law, equity or otherwise, arising under the laws of any jurisdiction, by reason of, or related in any way, directly or indirectly, to any loss, injury or damages of any kind caused, or allegedly caused, in whole or in part, directly or indirectly, by any Insured. For the avoidance of doubt, and without limiting the generality and breadth of the foregoing, Released Claims include Claims Against Prodigy and D&O Claims.

1.16 "Settlement Amount" means the sum of $3,164,500.00.

1.17 "Settling Insurer" means Great American Insurance Company.

## II.  CONDITIONS TO EFFECTIVENESS OF THE AGREEMENT

This Agreement and the releases contained herein shall become effective only upon the occurrence of all of the following conditions precedent:  (i) execution of this Agreement by the Parties; (ii) entry of the Approval Order that becomes a Final Order; and (iii) entry by the Bankruptcy Court of a Final Order approving the Capkanis Settlement in a form satisfactory to

Great American in its sole discretion, which approval shall not be unreasonably withheld ("Capkanis Order").

If the Approval Order and Capkanis Order do not become Final Orders within one hundred fifty (150) days of the filing of the Approval Motion, this Agreement shall be deemed null and void at the written request of either Party hereto. However, in the event the Approval Order and Capkanis Order do not become Final Orders within one hundred fifty (150) days of the filing of the Approval Motion, the Parties agree to work together in good faith to attempt to address and resolve any issues raised by the Bankruptcy Court or other parties in the Bankruptcy Cases in an attempt to gain approval of the Approval Order and/or Capkanis Order, as the case may be, before declaring the Agreement null and void. The Approval Order and Capkanis Order may be a single order so long as such order is entered by the Bankruptcy Court and becomes a Final Order.

The Trustee shall serve notice of the Approval Motion on (i) all Persons having appeared in the Bankruptcy Cases and/or having requested service of documents filed in the Bankruptcy Cases or, if known, their attorneys, (ii) all Persons having filed a proof of claim against any Prodigy Debtor, (iii) all Persons identified or listed in the Prodigy Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs, (iv) each Insured Organization, (v) Brian Newman, Carey Fieldcamp, Vincent Mikolay, Leonard Chinchay, Bill Garcia, Chris Andresen, Alejandra Rincon, and Juanita Galvis; and (vi) Shorewood Real Estate Group, David Simon, Stephen Im and S. Lawrence Davis. Unless already included in (i) – (vi) of this paragraph above, the Trustee shall also serve notice of the Approval Motion on each the following to the extent the Trustee is able identify such notice parties with the exercise of reasonable diligence based on the information available to him: (a) all Persons having filed or threatened to file a claim or lawsuit against any Insured, (b) each Insured under the Policy, (c) every Person who was a director, officer, general partner, partner, manager, executive, owner, employee, contractor or consultant of the Prodigy Debtors or any other Insured Organization, (d), all Persons who invested in, or loaned or funded money to, any Insured Organization, and (e) all foreign or domestic probate estates or representatives Rodrigo Niño.

The Trustee shall provide national publication notice of the Approval Motion in the Wall Street Journal at a cost not to exceed $10,000. The Trustee shall post, or cause to be posted, notice of the Approval Motion on The Assemblage NYC Facebook page located at https://www.facebook.com/TheAssemblageNYC/.[2]

If the Trustee, through reasonable effort, is able to obtain authority or access to do so, the Trustee shall post, or cause to be posted, notice of the Approval Motion on the LinkedIn web pages located at the addresses https://www.linkedin.com/company/prodigy-network/about/ and https://www.linkedin.com/company/the-assemblage/.

---

[2] If The Assemblage NYC Facebook page does not permit such a post to be made and the Trustee is unable through reasonable effort to obtain posting permission, the requirement to post notice on such Facebook page will be waived by the Parties.

**III. SETTLEMENT PAYMENT**

1. Payment

   a. In the event the Approval Order and Capkanis Order become Final Orders, within thirty (30) days after Great American receives written notice from the Trustee that the Approval Order and Capkanis Order have become Final Orders, Great American shall pay $3,164,500.00 in United States Dollars (the "Settlement Payment") to the Prodigy Network LLC bankruptcy estate by check payable to "Jeoffrey L. Burtch, Chapter 7 trustee for Prodigy Network LLC" or by wire transfer per account details to be provided by the Trustee along with the notice that the Approval Order has become a Final Order. Great American's payment of the Settlement Payment may be made by more than one check or wire transfer.

   b. The Settlement Payment shall be held by the Trustee and disbursed in accordance with the Bankruptcy Code, Bankruptcy Rules, and any orders issued by the Bankruptcy Court.

2. Great American shall have no liability or responsibility for any allocation of the Settlement Payment or the Trustee's administration of the Settlement Payment or the Estate.

**IV. BANKRUPTCY OBLIGATIONS**

1. Within five (5) business days after the Execution Date, or as soon thereafter as possible, the Trustee will file the Approval Motion and seek entry of the Approval Order.

2. The Parties shall use their best efforts to see that the Approval Order and Capkanis Order are entered and become Final Orders. Great American, however, shall not be required to incur any expense in connection with the Trustee seeking approval of the Capkanis Settlement or ensuring the Capkanis Order becomes a Final Order.

**V. TERMINATION OF POLICY RIGHTS, POLICY BUYBACK, AND FULL RELEASES**

1. Automatically upon actual receipt of the Settlement Payment by the Trustee, and without need for any further action by any Party or order of the Bankruptcy Court, Great American shall irrevocably, fully, finally, and forever be released, and shall be deemed to have been fully, finally, and forever released, from the following:

   a. any and all Claims by any Person, including any Insured, for insurance coverage, payment, or other obligations, rights or recoveries of any kind under the Policy;

b.  any and all Released Claims, including without limitation any obligations or duties of any kind arising from, or that could have arisen from, such Released Claims; and

c.  any and all Claims, whether known or unknown, suspected, claimed or alleged, fixed or contingent, arising from, related to, or in connection with the making, drafting, negotiation, or execution of the Agreement.

2.  Effective immediately upon the receipt of the Settlement Payment by the Trustee and without any further action being required, the Policy, and any and all of the Insureds' rights and interests in the Policy, shall be deemed to have been sold back to Great American pursuant to sections 363(b) and (f) of the Bankruptcy Code free and clear of any interest or right in the Policy, with such interests or rights attaching to the Settlement Payment in accordance with their respective priorities. The Policy shall be deemed exhausted and terminated for all purposes, all rights, duties, and coverage under the Policy shall be fully and finally extinguished, and the Policy shall no longer remain in effect. Furthermore, the Approval Order shall provide that (i) all Persons who hold or assert, or may in the future hold or assert, any claim against an Insured, arising in connection with any activities covered by the Policy, or in connection with the Insureds' activities giving rise to the claims made or to be made under the Policy, or (ii) any other Person who may claim to be an insured, additional insured, or otherwise entitled to any benefit or recovery, directly or indirectly, from or under the Policy, are permanently stayed, restrained, and enjoined from asserting any such claim, right or entitlement, commencing a proceeding, or taking any other action against Great American for the purpose of obtaining any recovery or other relief from Great American or under or in connection with the Policy.

3.  THE PARTIES ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED BY THEIR ATTORNEYS CONCERNING, AND ARE FAMILIAR WITH, CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVE ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY." THE PARTIES ALSO ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED BY THEIR ATTORNEYS THAT THERE MAY BE OTHER FEDERAL STATUTES, STATE STATUTES, OR OTHER LAWS OF EFFECT SIMILAR TO CALIFORNIA CIVIL CODE SECTION 1542, AND THE PARTIES EXPRESSLY WAIVE ANY AND ALL RIGHTS UNDER ANY AND ALL SUCH STATUTES AND LAWS. THE PARTIES EXPRESSLY ASSUME THE RISK THAT ACTS, OMISSIONS, MATTERS, CAUSES, OR THINGS MAY HAVE OCCURRED THAT THEY DO NOT KNOW OR DO NOT SUSPECT TO EXIST.

4.      Nothing in this Section V shall apply to, impair, or affect the Parties' rights and obligations set forth in this Agreement or to enforce the terms of this Agreement.

## VI.     RIGHTS OF THIRD PARTIES

1.      Nothing contained herein is or shall be deemed an admission or representation by Great American (i) that the Prodigy Debtors, their bankruptcy estates, any Insured, or any other Person is or was entitled to any insurance coverage or payments under the Policy, (ii) as to the validity of any of the positions that have been or could have been asserted, or (iii) of any liability whatsoever with respect to the Released Claims or other Claims or demands.

2.      Except as expressly provided in this Agreement, the Parties specifically disavow any intention to create rights for third parties under or in relation to this Agreement.

## VII.    REPRESENTATIONS & WARRANTIES

1.      Great American represents and warrants to the Trustee that it has full corporate authority to execute this Agreement as a binding and legal obligation of Great American.  The Person or Persons signing this Agreement on behalf of Great American represents and warrants that such Person is authorized by Great American to execute this Agreement as a binding and legal obligation of Great American.

2.      The Trustee represents and warrants to Great American that, subject to entry of the Approval Order by the Bankruptcy Court, he has the authority to execute this Agreement as a binding and legal obligation of the Prodigy Debtors and their respective bankruptcy estates.

3.      The Trustee represents and warrants to Great American that neither the Trustee nor the Prodigy Debtors or their respective bankruptcy estates has transferred the Policy, or any right or claim arising from or related thereto, to any Person or third party.

## VIII.   CONFIDENTIALITY

Upon the Parties' execution of the Agreement, the Agreement and its terms may be disclosed in the Approval Motion and during any hearing in the Bankruptcy Court at which the Approval Motion is being considered.  The negotiations leading to this Settlement Agreement are within the protection afforded compromises and offers of compromise by Rule 408 of the Federal Rules of Evidence and similar provisions of state law or state rules of court; however, the Parties may waive any such privileges only to the extent necessary to help the Parties obtain the approval of the settlement embodied in this Agreement.  The Parties agree that they will not otherwise disclose or use any information regarding the negotiations leading to this Agreement. Notwithstanding the foregoing, Great American may disclose any such information to its reinsurers, if any, to the extent necessary to pursue any available reinsurance.

## IX.   NO PREJUDICE AND CONSTRUCTION OF AGREEMENT

This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions. Accordingly, this Agreement does not reflect the Parties' views as to their rights and obligations with respect to matters or entities outside the scope of this Agreement. This Agreement is without prejudice to positions taken by Great American with regard to other policyholders or by the Prodigy Debtors, any Insured, or the Trustee with regard to other insurers or insurance policies. This Agreement is the jointly-drafted product of arms' length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed. As such, no Party will claim that this Agreement shall be strictly or presumptively construed against any other Party by reason of the identity of the drafter or the identity of the other Party as an insurance company, or otherwise.

## X.   ENTIRE AGREEMENT AND TERM; WAIVER OF UNKNOWN CLAIMS

1. This Agreement expresses the entire agreement and understanding between Great American and the Trustee. Except as expressly set forth in this Agreement, there are no representations, warranties, promises, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Agreement or alter its terms. Except for the representations and warranties of Section VII, if the facts or law related to the subject matter of this Agreement are found hereafter to be other than as is now believed by either of the Parties, the Parties expressly accept and assume the risk of such possible difference of fact or law and agree that this Agreement nonetheless shall be and remain effective according to its terms. Notwithstanding anything else in this Agreement, the Parties have not and shall not be deemed to have waived any claims arising out of the representations and warranties contained in Section VII herein.

2. Titles and captions contained in this Agreement are inserted only as a matter of convenience and are for reference purposes only. Such titles and captions are intended in no way to define, limit, expand, or describe the scope of this Agreement or the intent of any other provision hereof.

## XI.   NO MODIFICATION

No change or modification of this Agreement shall be valid unless it is made in writing and signed by all of the Parties to this Agreement and, if required, approved by the Bankruptcy Court.

## XII.   EXECUTION

There will be two signed originals of this Agreement, which may be executed in duplicate counterparts. Each counterpart may be delivered by facsimile transmission, and an emailed signature shall have the same force and effect as an original signature.

## XIII. NOTICES

Unless another Person is designated, in writing, for receipt of notices hereunder, any and all statements, communications, or notices to be provided pursuant to this Agreement shall be in writing and sent by email and by first-class mail, postage prepaid, to the individuals noted below:

**For The Trustee:**

>   Jeoffrey L. Burtch
>   Trustee
>   919 N Market St Ste 460
>   Wilmington, DE, 19801-3014
>   jburtch@burtchtrustee.com
>   Telephone: (302) 472-7427

**Also For The Trustee:**

>   Katherine B. Kramer
>   DGW Kramer LLP
>   One Rockefeller Plaza
>   Suite 1060
>   New York, NY 10020
>   kkramer@dgwllp.com
>   Telephone: (917) 688-2585

**Also For The Trustee:**

>   Mark E. Felger
>   Cozen O'Connor
>   1201 North Market Street
>   Suite 1001
>   Wilmington, DE 19801
>   mfelger@cozen.com
>   Telephone: (302) 295-2000

**For Great American**

>   Judith Warchol
>   Divisional Vice President
>   Executive Liability Division
>   1450 American Lane, 8th Floor
>   Schaumburg, IL 60173
>   jwarchol@gaig.com
>   Telephone: (224) 250-3672

**Also For Great American:**

> James J. Huberty
> Walker Wilcox Matousek LLP
> One North Franklin Street
> Suite 3200
> Chicago, IL 60606
> jhuberty@walkerwilcox.com
> Telephone: (312) 244-6778

> Tony L. Draper
> Walker Wilcox Matousek LLP
> 1001 McKinney Street, Suite 2000
> Houston, TX 77002
> tdraper@walkerwilcox.com
> Telephone: (713) 343-6556

## XIV.  MISCELLANEOUS

1.  This Agreement was reviewed by independent legal counsel for the Trustee and Great American before it was signed.  The Trustee and Great American each (i) entered into this Agreement after consulting with counsel and (ii) have a full understanding of the contents and consequences of this Agreement.

2.  The Trustee and Great American each acknowledge that no Party, nor any corporate affiliate of any of them, has been unduly pressured to accept this Agreement.  No promise or inducement which is not herein expressed has been made to any Party or corporate affiliate of any Party.

3.  In executing this Agreement, the Trustee and Great American acknowledge that they are not relying, nor have they relied, upon any statement or representation made by or on behalf of the other Party, or by any agent, attorney, or employee of the other Party, concerning the Policy, the disputes surrounding the coverage (if any) provided by the Policy, the Bankruptcy Cases, the Released Claims, or this Agreement, other than the representations and warranties set forth herein.

4.  The invalidity or unenforceability of any particular provision in this Agreement shall not affect the validity or enforceability of any other provision in this Agreement; provided, however, that the provisions in this Agreement regarding the Settlement Payment, V.1, V.2, V.3, VII, and the effectiveness of the releases shall not be severable from this Agreement.

5.  The Parties agree to do such further acts and execute such further documents as they agree may be necessary or desirable to carry out the intent and purpose of this Agreement.

6. Each Party expressly agrees that it shall bear its own costs and attorneys' fees, if any, with respect to the drafting and negotiation of this Agreement.

7. By executing this Agreement, the Trustee expressly represents, warrants, and affirms that he has not made, and will not in the future make, any assignment or transfer of any claim against Great American released by this Agreement to any Person.

8. Nothing in this Agreement, or any actions taken by the Parties in connection with the negotiation and execution of this Agreement, constitutes an admission or concession by any Party on any issue, including the alleged existence of coverage for any claim or matter under the Policy.

9. The Bankruptcy Court shall retain jurisdiction to hear and determine all matters, claims, rights, or disputes arising from or related to this Agreement.

**IN WITNESS WHEREOF**, this Agreement has been read and signed by the duly authorized representatives of the Parties on the dates set forth below.

**TRUSTEE**

Dated: _October 7_, 2022    By: _____

Jeoffrey L. Burtch, solely in his capacity as the Chapter 7 trustee for the Prodigy Debtors

**GREAT AMERICAN INSURANCE COMPANY**

Dated: _____, 2019    By: _____

Judith Warchol
Divisional Vice President
Executive Liability Division

6.    Each Party expressly agrees that it shall bear its own costs and attorneys' fees, if any, with respect to the drafting and negotiation of this Agreement.

7.    By executing this Agreement, the Trustee expressly represents, warrants, and affirms that he has not made, and will not in the future make, any assignment or transfer of any claim against Great American released by this Agreement to any Person.

8.    Nothing in this Agreement, or any actions taken by the Parties in connection with the negotiation and execution of this Agreement, constitutes an admission or concession by any Party on any issue, including the alleged existence of coverage for any claim or matter under the Policy.

9.    The Bankruptcy Court shall retain jurisdiction to hear and determine all matters, claims, rights, or disputes arising from or related to this Agreement.

**IN WITNESS WHEREOF**, this Agreement has been read and signed by the duly authorized representatives of the Parties on the dates set forth below.

**TRUSTEE**

Dated: _____, 2022     By: _____

Jeoffrey L. Burtch, solely in his capacity as the Chapter 7 trustee for the Prodigy Debtors

**GREAT AMERICAN INSURANCE COMPANY**

Dated: _October 10_, 20~~19~~ 22     By: _Judith Warchol_

Judith Warchol
Divisional Vice President
Executive Liability Division

# EXHIBIT B

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into by Jeoffrey L. Burtch, solely in his capacity as the Chapter 7 trustee (the "Trustee") for the Prodigy Debtors (as defined below), Great American Insurance Company ( "Great American") and Emily Capkanis ("Capkanis"). The Trustee, Great American and Capkanis are collectively referred to herein as the "Parties."

## RECITALS

**WHEREAS,** on March 25, 2021, the Prodigy Network, LLC and a number of affiliates (collectively, the "Prodigy Debtors") filed voluntary petitions for relief under Chapter 7 of Title 11 of the United States Code (11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases are jointly administered under the case captioned *In re Prodigy Network, LLC*, Case No. 21-10622-JTD (the "Bankruptcy Cases"); and

**WHEREAS,** the Trustee was appointed to serve as the Chapter 7 trustee of the Bankruptcy Cases and the Prodigy Debtors' chapter 7 bankruptcy estates; and

**WHEREAS,** Great American Insurance Company ("Great American") issued Private Equity Liability Insurance Policy No. PEP2788734 (the "Policy") to Prodigy Shorewood Investment Management LLC, effective for the Policy Period from September 6, 2018 to September 6, 2019. The Policy Period was subsequently extended to September 6, 2023; and

**WHEREAS,** the Policy's Insured Organization Schedule identifies approximately 65 organizations, including the Prodigy Debtors, that are Insured Organizations under the Policy (the "Insured Organizations") and defines Insured Persons to include "any natural person who was, is or shall become a director, officer, general partner, manager, equivalent executive or employee of an Insured Organization" (the "Insured Persons," and together with the Insured Organizations, the "Insureds" and each individually, an "Insured"); and

**WHEREAS,** prior to filing the Bankruptcy Cases, Capkanis was employed by Prodigy Network, LLC; and

**WHEREAS,** Capkanis has alleged that she was wrongfully terminated, and was otherwise subjected to unlawful treatment in the course of her employment, and commenced an action styled *Emily Capkanis v. Prodigy Network LLC*, Case No. 20 Civ. 07144 (CM) (GWG) in the Southern District of New York (the "Federal Court Action") asserting a number of claims (the "Employment Practices Claims");

**WHERAS,** the Court presiding over the Federal Court Action issued a default judgment finding liability as to Prodigy; and

**WHEREAS,** Capkanis has filed a proof of claim in the Bankruptcy Cases, and has further asserted that Great American is obligated under the Policy to provide coverage for the Employment Practices Claims, which Great American denies; and

**WHEREAS,** the Parties desire to resolve, on the terms set forth in this Agreement, any and all disputes and issues between them regarding all past, present, and future claims, rights or obligations under or with respect to the Policy related in any way to the Prodigy Debtors and/or other Insureds, including without limitation the Employment Practices Claims, past, present, or future, known or unknown, which have been brought, could have been brought, or may be brought in the future by or against the Prodigy Debtors, any Insureds, or Great American under or with respect to the Policy; and

**WHEREAS,** the Trustee and Capkanis participated in extensive settlement negotiations and exchanges of information, including a lengthy mediation leading to this Agreement. The mediation was presided over by Peter H. Woodin, an experienced JAMS mediator with extensive experience in complex insurance matters. The Parties fully and freely consent to this Agreement and each of the provisions set forth herein, and believe that this Agreement is fair and equitable and in the best interest of each Party, each Insured, and, in the case of the Trustee, in the best interest of the Prodigy Debtors' bankruptcy estates, creditors, and parties in interest.

**NOW, THEREFORE,** in consideration of the mutual covenants contained herein, the sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, subject to the approval of the Bankruptcy Court, the Parties do hereby agree as follows:

## AGREEMENT

## I.    DEFINITIONS

All capitalized terms in this Agreement shall have the meanings set forth below, unless otherwise defined herein. Each defined term stated in the singular shall include the plural and each defined term stated in the plural shall include the singular as the context warrants. The word "including" means "including but not limited to."

1.1    "Approval Motion" means the motion to be filed by the Trustee in the Bankruptcy Cases pursuant to, inter alia, sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, seeking entry of the Approval Order.

1.2    "Approval Order" means an order by the Bankruptcy Court approving this Agreement pursuant to Bankruptcy Rule 9019, in a form satisfactory to Capkanis in her sole discretion, which approval shall not be unreasonably withheld.

1.3    "Bankruptcy Rule" means a rule contained in the Federal Rules of Bankruptcy Procedure, as amended, but only as applicable to the Bankruptcy Case.

1.4    "Claim" means any past, present, or future claim, demand, action, cause of action, suit or liability of any kind or nature whatsoever, whether at law or in equity, known or unknown, asserted or unasserted, anticipated or unanticipated, accrued or unaccrued, fixed or contingent, which has been or may be asserted by or on behalf of any Person, seeking monetary relief, damages (including compensatory, punitive, exemplary, or extra-contractual damages) or equitable, mandatory, injunctive, or any other type of relief, including without limitation cross-claims, counterclaims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations,

2

actions, rights, requests, causes of action, orders, actual or constructive fraud, misrepresentation, violations of any statute, regulation, or code, or any other type of extra-contractual liability or alleged wrongdoing.

**1.5** "Execution Date" means the last date on which this Agreement was executed by all Parties.

**1.6** "Final Order" means an order or judgment of any court of competent jurisdiction the operation or effect of which is not stayed, and as to such order or judgment the time to appeal, seek review, reargument, rehearing, or modification has expired (except under Fed. R. Civ. P. 60 or Bankruptcy Rule 9024) and as to which no appeal, petition for review, or reargument or rehearing was filed or, if filed, does not remain pending.

**1.7** "Final Approval Order Date" means the date on which the Approval Order becomes a Final Order.

**1.8** "Great American Settlement" means the settlement agreement by and between the Trustee and Great American regarding the Policy.

**1.9** "Person" means any natural or legal entity or person, including an individual, a corporation, a partnership, a joint venture, an association, a trust, an estate, any other entity or organization, any federal, state, or local government or any governmental or quasi-governmental body, unit or agency or political subdivision or any agency, department, board or instrumentality thereof, or the United States Trustee.

**1.10** "Released Claim" or "Released Claims" means any liquidated or unliquidated: (i) Claim against the Prodigy Debtors or their respective estates; (ii) Claim against any Insured, to the extent such Claim is related to the Employment Practices Claims; (iii) Claim against Great American as a result of or related in any way to its insurance relationship with any Insured under the Policy; and (iv) Claim to or under the Policy or its proceeds, including without limitation any and all rights to coverage or other direct or indirect recovery under or from the Policy, whether in the nature of or sounding in tort, contract, extracontractual, warranty, or any other theory of liability in law, statute, common law, equity, or otherwise, arising under the laws of any jurisdiction, by reason of, or related in any way, directly or indirectly, to any loss, injury or damages of any kind caused, or allegedly caused, in whole or in part, directly or indirectly, by any Insured. For the avoidance of doubt, and without limiting the generality and breadth of the foregoing, Released Claims include the Employment Practices Claims.

**1.11** "Settlement Amount" means the sum of $164,500.00.

**1.12** "Settling Insurer" means Great American.

## II. CONDITIONS TO EFFECTIVENESS OF THE AGREEMENT

This Agreement and the releases contained herein shall become effective only upon the occurrence of all of the following conditions precedent: (i) execution of this Agreement by the Parties; (ii) the Approval Order is entered and becomes a Final Order; and (iii) entry by the

Bankruptcy Court of Final Order approving the Great American Settlement ("Great American Order"). If the Approval Order and Great American Order do not become a Final Orders within one hundred fifty (150) days of the filing of the Approval Motion, this Agreement shall be deemed null and void at the written request of either Party hereto. However, in the event that both the Approval Order and Great American Order have not become Final Orders within one hundred fifty (150) days of the filing of the Approval Motion, the Parties agree to work together in good faith to attempt to address and resolve any issues raised by the Bankruptcy Court or other parties in the Bankruptcy Cases in an attempt to gain approval of the Approval Order and/or Great American Order, as the case may be, before declaring the Agreement null and void.

## III.    SETTLEMENT PAYMENT

In the event the Approval Order and Great American Order become Final Orders, within thirty (30) days after Capkanis receives written notice from the Trustee that the Approval Order and Great American Order have become Final Orders and the Trustee has received payment according to the terms of the Great American Settlement, the Trustee shall pay the Settlement Amount in three separate sums: (a) $66,273.06 to be paid to Capkanis, by check or by wire transfer in accordance with instructions to be provided by Capkanis no later than five (5) days after all of the conditions to effectiveness set forth in Section II have been satisfied; (b) $82,483.19 to be paid to Wigdor LLP, by wire transfer in accordance with instructions to be provided by Wigdor LLP no later than five (5) days after all of the conditions to effectiveness set forth in Section II have been satisfied; and (c) $15,743.75 to be paid to Vladeck, Raskin & Clark, P.C., by wire transferin accordance with instructions to be provided by Wigdor LLP no later than five (5) days after all of the conditions to effectiveness set forth in Section II have been satisfied. Great American shall under no circumstance be obligated to pay the Settlement Amount to any party.

## IV.    RELEASES

Automatically upon receipt of the Settlement Amount by Capkanis, and without need for any further action by any Party or order of the Bankruptcy Court, the Trustee, Great American, all Insureds, and the Prodigy Debtors and their estates shall be irrevocably, fully, finally, and forever released, and be deemed to have been fully, finally, and forever released, from the following: (i) any and all Released Claims, including without limitation any obligations or duties of any kind arising from, or that could have arisen from, such Released Claims; and (ii) any and all Claims, whether known or unknown, suspected, claimed or alleged, fixed or contingent, arising from, related to, or in connection with the making, drafting, negotiation, or execution of the Agreement. Without limiting the generality of the foregoing, Capkanis agrees that she shall file a withdrawal of any claim(s) that she has filed in any of the Bankruptcy Cases within ten (10) days after receipt of the Settlement Amount.

## V.    BANKRUPTCY OBLIGATIONS

The Parties shall use their best efforts to see that the Approval Order and Great American Order are entered and become Final Orders. Great American, however, shall not be required to incur any expense in connection with the Trustee and Capkanis seeking approval of the Capkanis Settlement or ensuring the Capkanis Order becomes a Final Order.

## VI.   NO ADMISSION

Nothing contained herein is or shall be deemed an admission or representation by the Trustee or Great American as to: (i) the merits of the Employment Practices Claims; or (ii) of any liability whatsoever with respect to the Released Claims or other Claims or demands that may be asserted by Capkanis.

## VII.   NO PREJUDICE AND CONSTRUCTION OF AGREEMENT

This Agreement is the jointly-drafted product of arms' length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed. As such, no Party will claim that this Agreement shall be strictly or presumptively construed against any other Party by reason of the identity of the drafter or the identity of the other Party as an insurance company, or otherwise.

## VIII.   ENTIRE AGREEMENT AND TERM; WAIVER OF UNKNOWN CLAIMS

**8.1**    This Agreement expresses the entire agreement and understanding between the Parties. Except as expressly set forth in this Agreement, there are no representations, warranties, promises, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Agreement or alter its terms. If the facts or law related to the subject matter of this Agreement are found hereafter to be other than as is now believed by either of the Parties, the Parties expressly accept and assume the risk of such possible difference of fact or law and agree that this Agreement nonetheless shall be and remain effective according to its terms.

**8.2**    Titles and headings contained in this Agreement are inserted only as a matter of convenience and are for reference purposes only. Such titles and headings are intended in no way to define, limit, expand, or describe the scope of this Agreement or the intent of any other provision hereof.

## IX.   NO MODIFICATION

No change or modification of this Agreement shall be valid unless it is made in writing and signed by all of the Parties to this Agreement and, if required, approved by the Bankruptcy Court.

## X.   EXECUTION IN COUNTERPARTS

This Agreement may be executed in more than one counterpart, each of which shall be deemed an original. Each counterpart may be delivered by facsimile transmission, and an emailed signature shall have the same force and effect as an original signature.

## XI.   NOTICES

Unless another Person is designated, in writing, for receipt of notices hereunder, any and all statements, communications, or notices to be provided pursuant to this Agreement shall be in writing and sent by email and by first-class mail, postage prepaid, to the individuals noted below:

For The Trustee:

> Jeoffrey L. Burtch, Trustee
> 919 N Market St Ste 460
> Wilmington, DE, 19801-3014
> jburtch@burtchtrustee.com
> Telephone: (302) 472-7427

With a copy to:

> Katherine B. Kramer
> DGW Kramer LLP
> One Rockefeller Plaza
> Suite 1060
> New York, NY 10020
> kkramer@dgwllp.com
> Telephone: (917) 688-2585

> And

> Mark E. Felger
> Cozen O'Connor
> 1201 North Market Street, Suite 1001
> Wilmington, DE 19801
> mfelger@cozen.com
> Telephone: (302) 295-2000

For Capkanis

> Emily Capkanis
> c/o Wigdor LLP
> 85 5th Avenue, 5th Floor
> New York, NY 10003

For Great American

> Judith Warchol
> Divisional Vice President
> Executive Liability Division
> 1450 American Lane, 8th Floor
> Schaumburg, IL 60173
> jwarchol@gaig.com
> Telephone: (224) 250-3672

With a copy to:

> James J. Huberty
> Walker Wilcox Matousek LLP
> One North Franklin Street
> Suite 3200
> Chicago, IL 60606
> jhuberty@walkerwilcox.com
> Telephone: (312) 244-6778
>
> And
>
> Tony L. Draper
> Walker Wilcox Matousek LLP
> 1001 McKinney Street, Suite 2000
> Houston, TX 77002
> tdraper@walkerwilcox.com
> Telephone: (713) 343-6556

## XII.  MISCELLANEOUS

**12.1**  This Agreement was reviewed by independent legal counsel for the Trustee and Capkanis before it was signed. The Trustee and Capkanis each: (i) entered into this Agreement after consulting with counsel; and (ii) have a full understanding of the contents and consequences of this Agreement.

**12.2**  The Trustee and Capkanis each acknowledge that no Party has been unduly pressured to accept this Agreement. No promise or inducement that is not herein expressed has been made to any Party.

**12.3**  In executing this Agreement, the Trustee and Capkanis acknowledge that they are not relying, nor have they relied, upon any statement or representation made by or on behalf of the other Party, or by any agent, attorney, or employee of the other Party, concerning the Bankruptcy Cases, the Released Claims, or this Agreement, other than the representations and warranties set forth herein.

**12.4**  The invalidity or unenforceability of any particular provision in this Agreement shall not affect the validity or enforceability of any other provision in this Agreement; provided, however, that the provisions in this Agreement regarding payment of the Settlement Amount, and the effectiveness of the releases shall not be severable from this Agreement.

**12.5**  The Parties agree to do such further acts and execute such further documents as may be reasonably necessary or desirable to carry out the intent and purpose of this Agreement.

**12.6**  Each Party expressly agrees that it shall bear its own costs and attorneys' fees, if any, with respect to the drafting and negotiation of this Agreement.

**12.7** This Agreement shall be binding on the Parties and their respective heirs, successors, and assigns.

**12.8** The Bankruptcy Court shall retain jurisdiction to hear and determine all matters, claims, rights, or disputes arising from or related to this Agreement.

IN WITNESS WHEREOF, this Agreement has been read and signed by the duly authorized representatives of the Parties on the dates set forth below.

Dated: October 7 , 2022

**Trustee**

By: _____

Jeoffrey L. Burtch, solely in his capacity as the Chapter 7 trustee for the Prodigy Debtors

Dated: _____, 2022

**Emily Capkanis, an individual**

_____
Emily Capkanis

Dated: _____, 2022

**Great American Insurance Company**

By: _____
Judith Warchol
Divisional Vice President
Executive Liability Division

**12.7**  This Agreement shall be binding on the Parties and their respective heirs, successors, and assigns.

**12.8**  The Bankruptcy Court shall retain jurisdiction to hear and determine all matters, claims, rights, or disputes arising from or related to this Agreement.

IN WITNESS WHEREOF, this Agreement has been read and signed by the duly authorized representatives of the Parties on the dates set forth below.

Dated: _____, 2022  **Trustee**


By:_____
   Jeoffrey L. Burtch, solely in his capacity as
   the Chapter 7 trustee for the Prodigy Debtors

Dated: _10/07/2022 | 10:33 AM PDT_____, 2022  **Emily Capkanis, an individual**


_____
Emily Capkanis

Dated: _____, 2022  **Great American Insurance Company**


By:_____
   Judith Warchol
   Divisional Vice President
   Executive Liability Division

**12.7** This Agreement shall be binding on the Parties and their respective heirs, successors, and assigns.

**12.8** The Bankruptcy Court shall retain jurisdiction to hear and determine all matters, claims, rights, or disputes arising from or related to this Agreement.

IN WITNESS WHEREOF, this Agreement has been read and signed by the duly authorized representatives of the Parties on the dates set forth below.

Dated: _____, 2022    **Trustee**

By:_____
    Jeoffrey L. Burtch, solely in his capacity as
    the Chapter 7 trustee for the Prodigy Debtors

Dated: _____, 2022    **Emily Capkanis, an individual**

_____
Emily Capkanis

Dated: _October 10_, 2022    **Great American Insurance Company**

By:_____
    Judith Warchol
    Divisional Vice President
    Executive Liability Division