# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Prodigy Network, LLC, *et al.*[1] | Case No. 21-10622 (JTD) |
| Debtors. | Jointly Administered |
| | Re: Docket No. 190 |

## OBJECTION OF WINSTON & STRAWN LLP TO TRUSTEE'S MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENTS PURSUANT TO RULE 9019

Winston & Strawn LLP ("Winston") respectfully submits this objection (the "Objection") to the Trustee's Motion for Order Approving Settlement Agreements Pursuant to Rule 9019 (the "Motion").[2] Specifically, Winston objects to the settlement agreement between the Trustee for the above-captioned debtors (the "Debtors") and Great American Insurance Company ("Great American") (the "Great American Agreement"), as well as that between the Debtors and Emily Capkanis (the "Capkanis Agreement"), which the Debtors contend was a condition precedent to the Great American Agreement. In support of this Objection, Winston respectfully states as follows:

---

[1] The Debtors in these cases are the following entities (the respective case numbers for each case follows in parentheses): 1234 W. Randolph Realty Associates LLC (21-10612-JTD), Prodigy Shorewood Master Rep Fund LLC-1234 W Randolph Series (21-10613-JTD), 1234 W Randolph Newco, Inc. (21-10614-JTD), Prodigy Shorewood Domestic Feeder Rep Fund LLC-1234 W Randolph Series (21-10615-JTD), 1400 N Orleans Realty Associates LLC (21-10616-JTD), Prodigy Shorewood Master Rep Fund LLC-1400 N. Orleans Series (21-10617-JTD), Prodigy Shorewood Domestic Feeder Rep Fund LLC- 1400 N Orleans Series (21-10618-JTD), 1400 N Orleans Newco, Inc. (21-10619-JTD), Prodigy Network Miami, LLC (21-10620-JTD), The Assemblage Hospitality, LLC (21-10621-JTD), and Prodigy Network, LLC (21-10622-JTD).

[2] Winston has reached an agreement with the Trustee to permit an extension of the deadline for this objection to December 2, 2022.

# I. PRELIMINARY STATEMENT

1.     Winston objects to the Motion because it lacks the requisite specificity necessary for the Debtors to meet their burden in justifying the broad and unwarranted releases granted to Great American as part of its settlement agreement with the Debtors. These releases significantly reduce the amount of money available to the estate's creditors, including Winston, which was being directly compensated by Great American for its litigation defense work on behalf of a number of Debtor entities prior to the filing and was given assurances of payment for that work.

2.     Specifically, the Debtors propose that Great American should be allowed to permanently and unequivocally recoup some 40% of the value of its Private Equity Liability Insurance Policy No. PEP2788734 (the "Policy") with Prodigy Network LLC ("Prodigy Network"), thus removing almost $1.6 million in value from the reach of creditors, despite the fact that Prodigy Network paid hefty premiums on that Policy for many years.

3.     In support of this broad and unequivocal release, Debtors do little more than recite the applicable legal standard governing approval of Great American Agreement and claim in conclusory fashion that each of its requirements has been met. They fail to identify the specific claims against officers or directors that they are choosing to forego; they provide no analysis of the strengths and weaknesses of those claims, or the ease or difficulty in prosecuting them; and they assert that collection would be "difficult" without having conducted any investigation into the assets and location of the various directors and officers identified as potentially liable. Without more, Debtors cannot justify so generous a deal as in the "paramount interest of creditors."

4.     The same is true of the Capkanis Settlement. Debtors assert that Great American made the payment to Ms. Capkanis a condition precedent to the Great American Agreement, but that does not explain why she should be allowed to leapfrog every other unsecured creditor with a potential litigation claim. Indeed, the Motion itself acknowledges that Debtors have failed to do

any diligence with respect to the strength of Ms. Capkanis's claims, let alone her ability to recover for them directly from Great American. Nor is there any substantive discussion of the cost or time that would be involved in resolving Ms. Capkanis's motion for lift stay or her claims in chief.

5. For these reasons and those adduced below, the Motion fails to meet its burden to justify the settlements and releases with Great American or Ms. Capkanis and should be rejected by this court.

## II. BACKGROUND

### A. Prodigy Litigations

6. As the Motion points out, 2019 and 2020 were difficult years for the Prodigy Enterprise (defined in Motion at ¶ 13). Once an inspirational example of how real estate development could be democratized and made available to investors of moderate means, Prodigy was badly impacted by a downturn in the real estate market, poor third-party management of some of its properties (particularly in New York) and the rapidly failing health of Mr. Rodrigo Niño, Prodigy's founder and CEO. Mr. Niño had built Prodigy into a successful player in the high-end residential and commercial real estate market and exercised near-complete control over all of its operations; his inability to continue doing so in the wake of his cancer's recurrence weakened the company and raised concerns amongst a number of its equity investors.

7. Although most of Prodigy's investors resolved to wait and see whether Mr. Niño (and the company) could recover, others were not so patient. On September 16, 2019, one of these investors, Avemar 2318 Corp., filed a complaint against Prodigy Network, LLC and Prodigy Shorewood Domestic Feeder Rep Fund, LLC (collectively, the "Avemar Defendants") in the Supreme Court of the State of New York, New York County. Avemar subsequently amended its Complaint on October 23, 2019. The gravamen of Avemar's Amended Complaint was that the

Avemar Defendants had committed breach of contract by suspending payment of redemption requests related to the property located at 1234 W Randolph Street, Chicago, Illinois 60607.

8.      Winston & Strawn, which had represented Prodigy Network LLC in a number of transactions over the years, was retained by the company to defend it against the claims. In that capacity, it drafted an answer to the Amended Complaint, oversaw offensive and defensive discovery, and fully briefed the parties' competing summary judgment motions. On July 2, 2020, the presiding judge, Jennifer G. Schecter, issued a Decision and Order denying the Avemar Defendants' motion for summary judgment and granting Avemar's motion for summary judgment. On July 13, 2020, the Court directed the clerk to enter judgment in favor of Avemar.

9.      On August 20, 2020, the Avemar Defendants, still represented by Winston, appealed the entry of judgment to the New York Supreme Court, Appellate Division, First Judicial Department.  The Avemar Defendants submitted a brief in support of their appeal on February 16, 2021.  On March 24, 2021, Avemar filed its responsive brief.  On March 31, 2021, the Avemar Defendants filed a Suggestion of Bankruptcy, staying the appeal proceeding.

10.      Although some of Winston's fees for work on the Avemar litigation were paid directly and in the ordinary course, its work on the appeal in 2021 was not.  In fact, the time entries for which appeared in Winston's March and May 2021 invoices, covering work completed through March 25, 2021, was never paid for by Great American despite its explicit written representations that it would pay those bills.

11.      Unsurprisingly, Avemar was not the only investor to sue. On February 5, 2020, Plaintiffs Francois Denimal, Michelle Denimal, Riad Chowdhury, John Friedman, Raquette View Limited, and Jailineli Limited (collectively, the "Denimal Plaintiffs"), who were represented by the same law firm as Avemar, filed their own complaint against 1234 W. Randolph NewCo, Inc.

and Prodigy Network, LLC (collectively, the "Denimal Defendants") in the United States District Court for the Southern District of New York. As in Avemar, the Denimal Plaintiffs alleged that the Denimal Defendants had committed breach of contract by suspending payments for redemption requests related to the 1234 W Randolph Street property.

12.     Winston was also retained in connection with the Denimal lawsuit. This time, the Denimal Plaintiffs moved for summary judgment right away, contending that the Avemar summary judgment decision should have preclusive effect against the Denimal Defendants. The Denimal Defendants filed an opposition to the motion for summary judgment on October 12, 2020. The Denimal Plaintiffs filed their reply on October 26, 2020. At argument, however, the Court expressed skepticism regarding both the preclusive effect of the state court's ruling and its correctness on the merits, and withheld any ruling on the motions while the parties proceeded with what became extensive discovery.

13.     Specifically, during the period for which Winston was not paid, the Denimal Defendants made extensive document productions, served and answered interrogatories, engaged in lengthy negotiations over a number of discovery and privilege disputes, and took and defended numerous depositions—many of which involved individuals located in the Asia and South America.

14.     Winston attorneys spent hundreds of hours handling these tasks, doing so based on Great American's explicit representation that it would pay Winston directly based on its acknowledgment that the Policy covered Prodigy's costs of defense. Through Great American's

failure to remit any payment for Winston's services, which covered the vast majority of the work done on the Denimal litigation, and Winston is owed roughly $500,000 in legal fees.

## B. Procedural History

15.     On March 25, 2021, the Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code.

16.     On or about March 26, 2021, the Trustee was appointed as interim trustee pursuant to Section 701 of the Bankruptcy Code.

17.     The meeting of creditors held pursuant to Section 341 of the Bankruptcy Code was started on April 29, 2021 and was concluded on May 19, 2021. The Trustee is now serving in that role pursuant to Section 702(d) of the Bankruptcy Code.

18.     Pursuant to the settlement with Great American, the insurance company will pay $3,164,500 (the "Great American Settlement Amount") to the Debtors. In return, Great American will receive a release from any claims that could have been pursued under the Policy, which provided coverage for certain claims against, among others, the Directors and Officers and the Debtors, for liability arising out of certain specified acts or omissions, as well as costs of defense. Coverage for all losses (including costs of defense) under the Policy is limited to $5,000,000, of which $4,750,000 million remains. Thus, Great American would reduce their exposure under the Policy by a sum of $1,585,500.

19.     The Motion further provides that the settlement agreement with Great American is explicitly conditioned on the approval of a settlement agreement with Ms. Capkanis, through

which the Trustee will pay her $164,500.00 in exchange for her granting releases to the Debtors, any insured person under the Policy, and specifically to Great American.

### III.    ARGUMENT

20.    The United States Court of Appeals for the Third Circuit provides four factors to consider in determining whether a settlement pursuant to Fed. R. Bankr. P. 9019 should be approved: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). The burden of persuading the bankruptcy court that the compromise is "fair and equitable" rests with the Debtors and Trustee. *See Key3Media Group, Inc. v. Pulver.com, Inc.,* 336 B.R. 87, 93 (Bankr.D.Del.2005).

21.    Courts will reject settlements where the Debtors fail to meet their burden. Upon an examination of the factors set by *In re Martin*, courts may reject a settlement due to a failure to demonstrate that the evidence supports the release from liability or if the consideration offered in the settlement is inadequate. *See, e.g., In re Boy Scouts of Am. & Delaware BSA, LLC*, 642 B.R. 504, 620 (Bankr. D. Del. 2022) (declining to approve third-party release because the record put forth by the debtors was unclear and did not provide adequate compensation to cover the extent of the release); *In re Ashing Corp.*, 552 B.R. 80, 84 (D. Del. 2015) (affirming rejection of the settlement where the "[a]greement would not serve to either minimize litigation or expedite the administration of the estate"); *In re Spansion Inc.,* 2009 WL 1531788, at *7 (Bankr. D.Del. June 2, 2009) (rejecting settlement upon finding the debtors provided "little information as to the

specifics of the Actions to provide a basis for evaluating the strengths and weaknesses of the litigation").

22.     The Motion is severely lacking in the specificity needed for the court to examine whether the Trustee has met their burden to demonstrate that the settlement is fair and equitable and, in particular, whether the payment by Great American justifies the incredibly broad and unequivocal releases incorporated therein. For example, in describing potential liability the Debtors may have with respect to certain D & O Claims, the Motion fails to actually name a single lawsuit or offer any individualized examination of the merits of any lawsuits, instead stating that "numerous investors filed civil lawsuits against a number of Prodigy Network affiliates" and that "it appears that there are grounds to allege that the Directors and Officers engaged in a number of wrongful acts and omissions" while listing various generalized purported breaches that may (although it is not clear from the motion due to the lack of reference to specific suits) have been alleged in the unnamed lawsuits. *See* Motion at ¶ 22-23. Nor is there any discussion of claims the Debtors themselves may have against (or the possibilities of recovering from) various directors and officers, including Mr. Fieldcamp in particular.

23.     Accordingly, the court has no way to examine the potential duration of these actual and potential lawsuits, the cost of defending them, the strength of the claims, the directors' and officers' potential liability, the pace of the suits, the amount for which the suits could potentially be settled, or the possibility of collecting from any culpable directors or officers. The silence of the Motion on each of these subjects has rendered it impossible for this Court to determine whether the settlement with Great American, and the releases it contains, are actually reasonable.

24.     Additionally, at no point do Debtors explain in any detail the actual benefits they are achieving on behalf of their creditors in exchange for the significant reduction of $1,585,500

in liability under the policy that is offered to Great American by the settlement, as well as its release provisions.[3] The Motion regularly makes conclusory assertions that this would promote an efficient resolution of the claims, but it is never explained why a discount needs to be offered to Great American in order to reach settlements for certain claims as may be necessary. The fact of the matter is that Prodigy Network LLC regularly and consistently paid its premiums to Great American, entitling it to a coverage limit of liability of $5 million. There is no reason why Great American should be able to avoid paying that full amount simply because Prodigy and its affiliates were forced to file for bankruptcy. Great American is achieving a complete release of all claims against it, including those it explicitly agreed to pay to Winston or other third parties, in exchange for a lump sum payment that will almost inevitably be eaten up by the Trustee's own fees and that of its various professionals (some of which represented the equity investors who brought suits against Prodigy Network LLC and its affiliates in the first place). This windfall to Great American and the Trustee's professionals comes at the direct expense of Winston and other creditors, and is thus improper.

25. For the releases to be approved, they must meet the "hallmarks" set by *In re Cont'l Airlines*, such that the non-debtor release is granted with "fairness, necessity to the reorganization, and specific factual findings to support these conclusions." 203 F.3d 203, 214 (3d Cir. 2000). Releases are denied in cases where these "hallmarks" are not present. *Id.* (denying release for failure to meet "hallmarks"); *In re Spansion, Inc*., 426 B.R. 114, 145 (Bankr. D. Del. 2010)

---

[3] The Motion also fails to include any basis for why the policy proceeds are actually the property of the estate that can be sold by the Debtors, as opposed to one that the Directors and Officers hold an interest in. As the Motion fails to offer any detailed analysis on the risk of diminution to other assets of the state or the risk of depletion of the policy proceeds, the Trustee fails to actually demonstrate that the policy is theirs to sell. *See In re Downey Fin. Corp.*, 428 B.R. 595, 604 (Bankr. D. Del. 2010) ("the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate, but only to the extent that the Policy's indemnification coverage or entity coverage actually protects the estate's other assets from diminution.")

(denying release when contributions did not "rise to the level of the critical financial contribution").

26.    None of the "hallmarks" are present here. The releases fail to meet the requisite standard of "fairness" because they significantly reduce Great American's liability under the Policy and provide Ms. Capkanis with a sizable sum potentially due under that same Policy before compensating any other creditors, including Winston. The Trustee has made no showing that the partial payment being made by Great American is in fact necessary to the reorganization, as the payment is only a small sum of the total liability of the entity. And, as discussed throughout this Objection, the Motion is devoid of the specific factual findings required for approval of such a release under *In re Cont'l Airlines*. Accordingly, the Trustee has failed to meet its burden in justifying the releases sought.

27.    The weakness of the Trustee's position in justifying the settlements and releases becomes apparent upon even a cursory examination of each of the *Martin* factors, none of which are satisfied by the limited and inadequate information contained in the Motion.

28.    On the first *Martin* factor, the Trustee makes generalized assertions about the "plausible possibility of success on at least a portion of the D&O Claims" as well as the difficulties presented for a defense. The Trustee also makes factual claims about the difficulties of obtaining information in light of Mr. Niño's death but is lacking any explanation of whether any investigation was pursued to assess other means of obtaining relevant information. Moreover, all these claims are made without offering any details about how the issues connect to the specific claims or cases

at issue, as well as the strengths and weaknesses of the specific claims and cases. *See* Motion at ¶¶ 58-59.

29.     For the second *Martin* factor, the Trustee makes a series of general and unsupported claims about the difficulties in collecting judgments that include no mention of the particularized circumstances relevant to any potentially culpable directors or officers, including Mr. Fieldcamp, as well as other parties that may share liability for any such claims, with the exception of Mr. Niño's death. *See* Motion at ¶¶ 60-61. The point then goes on to claim that the "only certain source of recovery is the insurance coverage" and that the "best way" to "maximiz[e] the recovery is to settle claims under the Policy before the policy limits are further eroded by reason of defense costs." Motion at ¶ 62. However, no details are provided to explain why offering Great American a $1,585,500 discount on their liability is the "best way" to settle claims or why the settlement would be necessary to avoid the erosion of these monies by incurring further defense costs in the litigations.

30.     Next, the Motion offers a one paragraph explanation on the third *Martin* factor regarding the complexity of the litigations involved. However, the assertions made merely include generalized claims about "complex" legal and factual issues, without offering any specific details of the suits themselves. *See* Motion at ¶ 63. The point, once again, fails to include any details about why a settlement with Great American is actually needed to most efficiently resolve the litigations or what support is available for the generalized claims made in the point.

31.     Last, the Trustee once again includes a boilerplate explanation for the fourth *Martin* factor for why the settlement with Great American will serve the interests of the creditors. The Motion states that resolving "claims under the Policy on the proposed terms represents a successful outcome for creditors by obviating the need for potentially protracted litigation, and the fees and

expenses necessarily attendant to such litigation." *See* Motion at ¶ 63. This assertion provides no details on why protracted litigation would be necessary in any specific suit, what the estimated fees would be, or why the settlement with Great American is necessary in order to reduce costs for the creditors rather than deprive them of the $1,585,500 discount Great American is gaining in the settlement on the liability still outstanding on the Policy. The breadth of the release for Great American in the settlement is grossly disproportionate to the amount of benefit to be offered to the creditors considering the amount of money still outstanding on the policy.

32.     The Motion then moves on to the settlement of the Capkanis Claims, which provides no detailed analysis about the nature of the legal exposure to the Debtors. While claiming that the *Martin* factors are inapplicable to the evaluation of the settlement with Capkanis, the Trustee's ultimate argument is that this settlement is necessary, not for the direct benefit of the creditors, but because Great American has demanded a release for itself to the Capkanis Claims.

33.     The Trustee seeks a settlement with Capkanis despite earlier acknowledging that there are "likely defenses to the Capkanis Claims," (Motion at ¶ 42) and focuses on the representation that because Capkanis "stated an intention to pursue recovery from the Policy" (Motion at ¶ 43) and asserted that "she has the right to assert a direct claim against Great American under New York law," (Motion at ¶ 67) that Great American has made the settlement of the Capkanis Claims a condition of their own offer.

34.     The latter point acknowledges that the Capkanis Claims are not being settled to serve the interests of the creditors, but are rather are a means to benefit Great American's interests and preserve the settlement with Great American. The Trustee even concedes that "[w]hether or not Ms. Capkanis would have the right to pursue claims directly against Great American is of no significance in this evaluation," admitting the lack of diligence done on the Capkanis Claims and

liability they independently present to the creditors. Motion at ¶ 68. Mere conclusory assertions about the costs of this litigation without any independent analysis of the risks posed to the estate by the Capkanis Claims are not sufficient for the court to determine whether the settlement is reasonable.

35.     These failures further demonstrate the Motion's inability to justify the releases sought therein. The lack of benefits provided in return for the releases render them unfair, there is no representation that these releases will be necessary for the much more substantial reorganization of the entity that will be necessary, and the Motion is devoid of the specific factual findings required under applicable caselaw. Accordingly, this Court should sustain Winston's objection due to the Trustee's failure to meet its burden to demonstrate fair and equitable value to the creditors.

## CONCLUSION

36.     For the foregoing reasons, the Motion should be denied.

Dated: December 2, 2022                    **WINSTON & STRAWN LLP**[4]


By:   */s/ George E. Mastoris*
     George E. Mastoris
     Peter Fishkind
     WINSTON & STRAWN LLP
     200 Park Avenue
     New York, NY 10016
     Telephone:     (212) 294-6700
     Facsimile:     (212) 294-4700
     Emails:     gmastoris@winston.com
              pfishkind@winston.com

     *Attorneys for WINSTON & STRAWN LLP*

---

[4] While this objection was filed without local counsel engaged, Winston will engage local counsel shortly as required by the local rules to continue its representation in this case.