# EXHIBIT A

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into by Jeoffrey L. Burtch, solely in his capacity as the Chapter 7 trustee (the "Trustee") for the Prodigy Debtors (as defined below) and Hartford Accident and Indemnity Company (as defined below, "Hartford"). The Trustee and Hartford are collectively referred to herein as the "Parties."

## RECITALS

**WHEREAS**, on March 25, 2021, the Prodigy Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases are jointly administered under *In re Prodigy Network, LLC*, Case No. 21-10622-JTD (the "Bankruptcy Cases"); and

**WHEREAS**, the Trustee was appointed to serve as the Chapter 7 trustee of the Bankruptcy Cases and the Prodigy Debtors' chapter 7 bankruptcy estates; and

**WHEREAS**, Great American Insurance Company ("Great American") issued Private Equity Liability Insurance Policy No. PEP2788734 (the "GA Policy") to Prodigy Shorewood Investment Management LLC, effective for the Policy Period from September 6, 2018 to September 6, 2019. The GA Policy Period was subsequently extended to September 6, 2023. Subject to all of its terms, conditions, and limitations, the GA Policy affords up to a maximum aggregate Limit of Liability of $5,000,000 for all Loss (including Costs of Defense), subject to the applicable Retention; and

**WHEREAS**, Hartford Accident and Indemnity Company issued a Premier Excess Policy, Policy No. 10 DB 0324592-18 (the "Hartford Policy"), to Prodigy Shorewood Investment Management LLC, effective for the Policy Period from September 6, 2018 to September 6, 2019. The Hartford Policy Period was subsequently extended to September 6, 2023. The Hartford Policy was excess to and "follows form" to the terms, conditions, definitions and exclusions of the GA Policy, except to the extent stated otherwise in the Hartford Policy. Subject to all of its terms, conditions, limitations and exclusions, the Hartford Policy affords up to a maximum aggregate Limit of Liability of $5,000,000 for all Loss (including Costs of Defense), in excess of the $5,000,000 Limit of Liability of the underlying GA Policy.

**WHEREAS**, as defined in the GA Policy and therefore followed by the Hartford Policy, Insured Organizations include, without limitation, approximately 65 organizations identified in the Insured Organization Schedule, including the Prodigy Debtors (the "Insured Organizations"), and Insured Persons include "any natural person who was, is or shall become a director, officer, general partner, manager, equivalent executive or employee of an Insured Organization" (the "Insured Persons," and together with the Insured Organizations and any other Persons entitled to coverage under the Policy, the "Insureds" and each individually, an "Insured "); and

**WHEREAS**, prior to filing the Bankruptcy Cases, the Prodigy Debtors engaged in investment crowdfunding, real estate development, and property management; and

**WHEREAS**, numerous claims, including lawsuits, were asserted against the Prodigy Debtors both before and after the Bankruptcy Cases were filed, including without limitation

more than 2,000 proofs of claim that will be resolved in the Bankruptcy Cases (collectively, the "Claims Against Prodigy"); and

**WHEREAS**, the Trustee threatened to bring litigation claims against multiple Insured Persons for various alleged wrongful acts and omissions with regard to the Prodigy Debtors (the "D&O Claims"); and

**WHEREAS**, the Trustee has asserted that Great American and Hartford are obligated, respectively, under the GA Policy and the Hartford Policy to provide coverage for the Claims Against Prodigy and D&O Claims; and

**WHEREAS**, the Parties desire to resolve, on the terms set forth in this Agreement, any and all disputes and issues between them regarding all past, present, and future claims, rights or obligations under or with respect to the Hartford Policy related in any way to the Prodigy Debtors and/or other Insureds, including without limitation the Claims Against Prodigy and D&O Claims, past, present, or future, known or unknown, which have been brought, could have been brought, or may be brought in the future by or against the Prodigy Debtors, any Insured Organization, and/or or any Insured Person, under or with respect to the Hartford Policy; and

**WHEREAS**, the Trustee, Great American, and Hartford participated in extensive settlement negotiations and exchanges of information, including a lengthy mediation leading to this Agreement. The mediation was presided over by Peter H. Woodin, an experienced JAMS mediator with extensive experience in complex insurance matters. The Trustee and Hartford subsequently engaged in extensive further negotiations. The Parties fully and freely consent to this Agreement and each of the provisions set forth herein, and believe that this Agreement is fair and equitable and in the best interest of each Party, each Insured, and, in the case of the Trustee, in the best interest of the Prodigy Debtors' bankruptcy estates, creditors and parties in interest; and

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein, the sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, subject to the approval of the Bankruptcy Court, the Parties do hereby agree as follows:

## AGREEMENT

## I.  DEFINITIONS

All capitalized terms in this Agreement shall have the meanings set forth below, unless otherwise defined herein. Each defined term stated in the singular shall include the plural and each defined term stated in the plural shall include the singular as the context warrants. The word "including" means "including but not limited to."

1.0  "Approval Motion" means the motion to be filed by the Trustee in the Bankruptcy Cases pursuant to, *inter alia*, sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, seeking entry of the Approval Order.

1.1  "Approval Order" means an order by the Bankruptcy Court approving this Agreement between the Trustee and Hartford pursuant to Bankruptcy Rule 9019

and the sale by the Trustee to Hartford of the Hartford Policy pursuant to sections 363 and 105 of the Bankruptcy Code, in a form mutually agreeable to the Parties, or as may be modified by agreement of the Parties subject to Section XI of this Agreement.

1.2 "Bankruptcy Code" means the laws of the United States relating to bankruptcy or reorganization, including, without limitation, Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended, but only as applicable to the Bankruptcy Cases. Unless otherwise indicated herein, references to sections of the Bankruptcy Code shall refer to sections of Title 11 of the United States Code.

1.3 "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or such other court that assumes jurisdiction over the Bankruptcy Cases.

1.4 "Bankruptcy Rule" means a rule contained in the Federal Rules of Bankruptcy Procedure, as amended, but only as applicable to the Bankruptcy Cases.

1.5 "Capkanis Lawsuit" means the lawsuit filed by Emily Capkanis styled *Capkanis v. Prodigy Network LLC*, 20 Civ. 07144 (CM) (GWG) in the Southern District of New York.

1.6 "Capkanis Settlement" means the settlement agreement between the Trustee and Emily Capkanis resolving the Capkanis Lawsuit.

1.7 "Claim" means any past, present, or future claim, demand, action, cause of action, suit or liability of any kind or nature whatsoever, whether at law or in equity, known or unknown, asserted or unasserted, anticipated or unanticipated, accrued or unaccrued, fixed or contingent, which has been or may be asserted by or on behalf of any Person, seeking monetary relief, damages (including compensatory, punitive, exemplary or extra-contractual damages) or equitable, mandatory, injunctive, or any other type of relief, including without limitation cross-claims, counterclaims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, actions, rights, requests, causes of action, orders, any alleged breach of the duty of good faith and fair dealing, unfair claims practices, unfair trade practices, bad faith, actual or constructive fraud, misrepresentation, insurer misconduct, misfeasance and/or malfeasance, violations of any statute (other than criminal violations), regulation or code, or any other type of extra-contractual liability or alleged wrongdoing.

1.8 "Claimant" means any person or entity who has asserted, could have asserted, or in the future may be entitled to assert, a Released Claim.

1.9 "Great American" means Great American Insurance Company and: (i) all of its past, present, and future parents, subsidiaries, affiliates, divisions, and joint ventures; (ii) each of the past, present, and future employees, officers, directors, principals, agents, representatives, shareholders, and attorneys of any of the foregoing acting in their capacities as such; and (iii) the predecessors, successors, and assigns of all the above in their capacities as such.

1.10 "Execution Date" means the last date on which this Agreement was executed by all Parties.

1.11 "Final Order" means an order or judgment of any court of competent jurisdiction the operation or effect of which is not stayed, and as to such order or judgment the time to appeal, petition for certiorari, seek review, reargument, rehearing or modification has expired (except under F.R. Civ. P. 60) and as to which no appeal, petition for review, certiorari or reargument or rehearing was filed or, if filed, does not remain pending.

1.12 "Final Approval Order Date" means the date on which the Approval Order becomes a Final Order.

1.13 "Great American Approval Motion" means the motion filed by the Trustee in the Bankruptcy Cases pursuant to, inter alia, sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, at Docket No. 190 of *In re Prodigy Network* (21-10622-JTD), seeking entry of the Great American Approval Order;

1.14 "Great American Approval Order" means an order by the Bankruptcy Court approving the settlement agreement between the Trustee and Great American, as submitted in conjunction with the Great American Approval Motion;

1.15 "Great American Settlement" means the settlement agreement between the Trustee and Great American, filed as Exhibit A to the Great American Approval Motion at Docket No. 190 of *In re Prodigy Network* (21-10622-JTD).

1.16 "Hartford" means Hartford Accident and Indemnity Company and: (i) all of its past, present, and future parents, subsidiaries, affiliates, divisions, and joint ventures; (ii) each of the past, present, and future employees, officers, directors, principals, agents, representatives, shareholders, and attorneys of any of the foregoing acting in their capacities as such; and (iii) the predecessors, successors, and assigns of all the above in their capacities as such.

1.17 "Person" means any natural or legal entity or person, including an individual, a corporation, a partnership, a joint venture, an association, a trust, an estate, a trustee, any other entity or organization, any federal, state or local government or any governmental or quasi-governmental body, unit or agency or political subdivision or any agency, department, board or instrumentality thereof, the United States Trustee, or any agent or representative of the foregoing.

1.18 "Prodigy Debtors" means the following entities (the respective bankruptcy case number for each Debtor follows in parentheses): 1234 W. Randolph Realty Associates LLC (21-10612-JTD), Prodigy Shorewood Master Rep Fund LLC-1234 W Randolph Series (21-10613-JTD), 1234 W Randolph Newco, Inc. (21-10614-JTD), Prodigy Shorewood Domestic Feeder Rep Fund LLC-1234 W Randolph Series (21-10615-JTD), 1400 N Orleans Realty Associates LLC (21-10616-JTD), Prodigy Shorewood Master Rep Fund LLC-1400 N. Orleans Series (21-10617- JTD), Prodigy Shorewood Domestic Feeder Rep Fund LLC- 1400 N

Orleans Series (21-10618-JTD), 1400 N Orleans Newco, Inc. (21-10619-JTD), Prodigy Network Miami, LLC (21-10620-JTD), The Assemblage Hospitality, LLC (21-10621-JTD), Prodigy Network, LLC (21-10622-JTD).

1.19 "Released Claim" or "Released Claims" means any liquidated or unliquidated Claim by any Person (i) against the Prodigy Debtors and/or any other Insured, Insured Organization, or Insured Person, (ii) against Hartford as a result of or related in any way to its insurance relationship with any Insured under the Hartford Policy, and/or (iii) to or under the Hartford Policy or its proceeds, including without limitation any and all rights to coverage or other direct or indirect recovery under or from the Hartford Policy, whether in the nature of or sounding in tort, contract, extracontractual, warranty, or any other theory of liability in law, statute, common law, equity or otherwise, arising under the laws of any jurisdiction, by reason of, or related in any way, directly or indirectly, to any loss, injury or damages of any kind caused, or allegedly caused, in whole or in part, directly or indirectly, by any Insured. For the avoidance of doubt, and without limiting the generality and breadth of the foregoing, Released Claims include Claims Against Prodigy and D&O Claims.

1.20 "Settlement Amount" means the sum of $87,500.00.

## II. CONDITIONS TO EFFECTIVENESS OF THE AGREEMENT

This Agreement and the releases contained herein shall become effective only upon the occurrence of all of the following conditions precedent: (i) execution of this Agreement by the Parties; (ii) entry of the Approval Order that becomes a Final Order; and (iii) entry by the Bankruptcy Court of the Great American Approval Order that becomes a Final Order granting the Great American Approval Motion and approving the Great American Settlement in a form satisfactory to Hartford in its sole discretion, which approval shall not be unreasonably withheld.

If the Approval Order and the Great American Approval Order do not become Final Orders within one hundred fifty (150) days of the filing of the Approval Motion, this Agreement shall be deemed null and void at the written request of either Party hereto. However, in the event the Approval Order and Great American Approval Order do not become Final Orders within one hundred fifty (150) days of the filing of the Approval Motion, the Parties agree to work together in good faith to attempt to address and resolve any issues raised by the Bankruptcy Court or other parties in the Bankruptcy Cases in an attempt to gain approval of the Approval Order and/or Great American Approval Order, as the case may be, before declaring the Agreement null and void.

The Trustee shall serve notice of the Approval Motion on (i) all Persons having appeared in the Bankruptcy Cases and/or having requested service of documents filed in the Bankruptcy Cases or, if known, their attorneys, (ii) Brian Newman, Carey Fieldcamp, Vincent Mikolay, Leonard Chinchay, Bill Garcia, Chris Andresen, Alejandra Rincon, and Juanita Galvis; and (iii) Shorewood Real Estate Group, David Simon, Stephen Im and S. Lawrence Davis.

### III.  SETTLEMENT PAYMENT

1.  Payment

   a.  In the event the Approval Order and Great American Approval Order become Final Orders, within thirty (30) days after Hartford receives written notice from the Trustee that both the Approval Order and Great American Approval Order have become Final Orders, Hartford Accident and Indemnity Company shall pay $87,500.00 in United States Dollars (the "Settlement Payment") to the Prodigy Network LLC bankruptcy estate by check payable to "Jeoffrey L. Burtch, Chapter 7 trustee for Prodigy Network LLC" or by wire transfer per account details to be provided by the Trustee along with the notice that the both the Approval Order and the Great American Approval Order have become a Final Orders. Hartford's payment of the Settlement Payment may be made by more than one check or wire transfer.

   b.  The Settlement Payment shall be held by the Trustee and disbursed in accordance with the Bankruptcy Code, Bankruptcy Rules, and any orders issued by the Bankruptcy Court.

2.  Hartford shall have no liability or responsibility for any allocation of the Settlement Payment or the Trustee's administration of the Settlement Payment or the Estate.

### IV.  BANKRUPTCY OBLIGATIONS

1.  Within five (5) business days after the Execution Date, or as soon thereafter as possible, the Trustee will file the Approval Motion and seek entry of the Approval Order.

2.  The Parties shall use their best efforts to see that the Approval Order and Great American Approval Order are entered and become Final Orders. Hartford, however, shall not be required to incur any expense in connection with the Trustee seeking approval of the Great American Settlement or the Capkanis Settlement.

### V.  TERMINATION OF POLICY RIGHTS, POLICY BUYBACK, AND FULL RELEASES OF HARTFORD

1.  Automatically upon actual receipt of the Settlement Payment by the Trustee, and without need for any further action by any Party or order of the Bankruptcy Court, Hartford shall irrevocably, fully, finally, and forever be released, and shall be deemed to have been fully, finally, and forever released, from the following:

   a.  any and all Claims by any Person, including any Insured, for insurance coverage, payment, or other obligations, rights or recoveries of any kind under the Hartford Policy;

b.  any and all Released Claims, including without limitation any obligations or duties of any kind arising from, or that could have arisen from, such Released Claims; and

c.  any and all Claims, whether known or unknown, suspected, claimed or alleged, fixed or contingent, arising from, related to, or in connection with the making, drafting, negotiation, or execution of the Agreement.

2.  Effective immediately upon the receipt of the Settlement Payment by the Trustee and without any further action being required, the Hartford Policy, and any and all of the Insureds' rights and interests in the Policy, shall be deemed to have been sold back to Hartford pursuant to sections 363(b) and (f) of the Bankruptcy Code free and clear of any interest or right in the Hartford Policy, with such interests or rights attaching to the Settlement Payment in accordance with their respective priorities. The Hartford Policy shall be deemed terminated for all purposes, all rights, duties, and coverage under the Hartford Policy shall be fully and finally extinguished, and the Hartford Policy shall no longer remain in effect. Furthermore, the Approval Order shall provide that (i) all Persons who hold or assert, or may in the future hold or assert, any claim against an Insured, arising in connection with any activities covered by the Hartford Policy, or in connection with the Insureds' activities giving rise to the claims made or to be made under the Hartford Policy, or (ii) any other Person who may claim to be an insured, additional insured, or otherwise entitled to any benefit or recovery, directly or indirectly, from or under the Hartford Policy, are permanently stayed, restrained, and enjoined from asserting any such claim, right or entitlement, commencing a proceeding, or taking any other action against Hartford for the purpose of obtaining any recovery or other relief from Hartford or under or in connection with the Hartford Policy.

3.  THE PARTIES ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED BY THEIR ATTORNEYS CONCERNING, AND ARE FAMILIAR WITH, CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVE ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY." THE PARTIES ALSO ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED BY THEIR ATTORNEYS THAT THERE MAY BE OTHER FEDERAL STATUTES, STATE STATUTES, OR OTHER LAWS OF EFFECT SIMILAR TO CALIFORNIA CIVIL CODE SECTION 1542, AND THE PARTIES EXPRESSLY WAIVE ANY AND ALL RIGHTS UNDER ANY AND ALL SUCH STATUTES AND LAWS. THE PARTIES EXPRESSLY ASSUME THE RISK THAT ACTS, OMISSIONS, MATTERS, CAUSES, OR THINGS MAY

HAVE OCCURRED THAT THEY DO NOT KNOW OR DO NOT SUSPECT TO EXIST.

4.     Upon actual receipt of the Settlement Payment by the Trustee, the Trustee, in his capacity as such and on behalf of the Debtors' estates, and each of their respective parents, subsidiaries, affiliates, divisions, joint ventures and advisors shall release, acquit, and discharge any and all former directors and officers of the Prodigy Debtors from any and all claims and causes of action whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, in law, equity, contract, tort, or otherwise, by statute or otherwise, that such parties (whether individually or collectively) ever had, now have, or may have, arising out of actions or omissions of the directors and officers of the Prodigy Debtors in their respective capacities as such. Without limiting the generality of the foregoing, such release shall not extend to or otherwise compromise or impair (a) any claims that the Trustee may have against any party under Sections 544, 547, 548, and/or 550 of the Bankruptcy Code; (b) claims against S. Lawrence Davis, Shorewood Real Estate Group ("Shorewood"), David Simon, Stephen Im, or other employees, officers, or directors of Shorewood, or other Shorewood-related entities or parties, but solely with respect to claims that such parties are liable in their respective capacities as officers or directors of entities other than the Prodigy Debtors; or (c) such other claims as may be specifically excepted from the release under the terms of the Approval Order.

5.     Nothing in this Section V shall apply to, impair, or affect the Parties' rights and obligations set forth in this Agreement or to enforce the terms of this Agreement.

## VI.   RIGHTS OF THIRD PARTIES

1.     Nothing contained herein is or shall be deemed an admission or representation by Hartford (i) that the Prodigy Debtors, their bankruptcy estates, any Insured, or any other Person is or was entitled to any insurance coverage or payments under the Hartford Policy, (ii) as to the validity of any of the positions that have been or could have been asserted, or (iii) of any liability whatsoever with respect to the Released Claims or other Claims or demands.

2.     Except as expressly provided in this Agreement, the Parties specifically disavow any intention to create rights for third parties under or in relation to this Agreement.

## VII.   REPRESENTATIONS & WARRANTIES

1.     Hartford Accident and Indemnity Company represents and warrants to the Trustee that it has full corporate authority to execute this Agreement as a binding and legal obligation of Hartford Accident and Indemnity Company. The Person (or Persons) signing this Agreement on behalf of Hartford Accident and Indemnity Company represents and warrants that such Person is authorized by Hartford

Accident and Indemnity Company to execute this Agreement as a binding and legal obligation of Hartford Accident and Indemnity Company.

2.    The Trustee represents and warrants to Hartford that, subject to entry of the Approval Order by the Bankruptcy Court, he has the authority to execute this Agreement as a binding and legal obligation of the Prodigy Debtors and their respective bankruptcy estates.

3.    The Trustee represents and warrants to Hartford that neither the Trustee nor the Prodigy Debtors or their respective bankruptcy estates has transferred the Hartford Policy, or any right or claim arising from or related thereto, to any Person or third party.

## VIII.  CONFIDENTIALITY

Upon the Parties' execution of the Agreement, the Agreement and its terms may be disclosed in the Approval Motion and during any hearing in the Bankruptcy Court at which the Approval Motion is being considered. The negotiations leading to this Settlement Agreement are within the protection afforded compromises and offers of compromise by Rule 408 of the Federal Rules of Evidence and similar provisions of state law or state rules of court; however, the Parties may waive any such privileges only to the extent necessary to help the Parties obtain the approval of the settlement embodied in this Agreement. The Parties agree that they will not otherwise disclose or use any information regarding the negotiations leading to this Agreement. Notwithstanding the foregoing, Hartford may disclose any such information to its reinsurers, if any, to the extent necessary to pursue any available reinsurance.

## IX.  NO PREJUDICE AND CONSTRUCTION OF AGREEMENT

This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions. Accordingly, this Agreement does not reflect the Parties' views as to their rights and obligations with respect to matters or entities outside the scope of this Agreement. This Agreement is without prejudice to positions taken by Hartford with regard to other policyholders or by the Prodigy Debtors, any Insured, or the Trustee with regard to other insurers or insurance policies. This Agreement is the jointly-drafted product of arms' length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed. As such, no Party will claim that this Agreement shall be strictly or presumptively construed against any other Party by reason of the identity of the drafter or the identity of the other Party as an insurance company, or otherwise.

## X.  ENTIRE AGREEMENT AND TERM; WAIVER OF UNKNOWN CLAIMS

1.    This Agreement expresses the entire agreement and understanding between Hartford and the Trustee. Except as expressly set forth in this Agreement, there are no representations, warranties, promises, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Agreement or alter its terms. Except for the representations and warranties of Section VII, if the facts or law related to the subject matter of this Agreement are

found hereafter to be other than as is now believed by either of the Parties, the Parties expressly accept and assume the risk of such possible difference of fact or law and agree that this Agreement nonetheless shall be and remain effective according to its terms. Notwithstanding anything else in this Agreement, the Parties have not and shall not be deemed to have waived any claims arising out of the representations and warranties contained in Section VII herein.

2. Titles and captions contained in this Agreement are inserted only as a matter of convenience and are for reference purposes only. Such titles and captions are intended in no way to define, limit, expand, or describe the scope of this Agreement or the intent of any other provision hereof.

## XI.   NO MODIFICATION

No change or modification of this Agreement shall be valid unless it is made in writing and signed by all of the Parties to this Agreement and, if required, approved by the Bankruptcy Court.

## XII.   EXECUTION

There will be two signed originals of this Agreement, which may be executed in duplicate counterparts. Each counterpart may be delivered by facsimile transmission, and an emailed signature shall have the same force and effect as an original signature.

## XIII.   NOTICES

Unless another Person is designated, in writing, for receipt of notices hereunder, any and all statements, communications, or notices to be provided pursuant to this Agreement shall be in writing and sent by email and by first-class mail, postage prepaid, to the individuals noted below:

**For The Trustee:**

Jeoffrey L. Burtch
Trustee
919 N Market St Ste 460
Wilmington, DE, 19801-3014
jburtch@burtchtrustee.com
Telephone: (302) 472-7427

**Also For The Trustee:**

Katherine B. Kramer
DGW Kramer LLP
One Rockefeller Plaza
Suite 1060
New York, NY 10020
kkramer@dgwllp.com

Telephone: (917) 688-2585

**Also For The Trustee:**

Mark E. Felger
Cozen O'Connor
1201 North Market Street
Suite 1001
Wilmington, DE 19801
mfelger@cozen.com
Telephone: (302) 295-2000

**For Hartford**

Maurice O'Shea
The Hartford
One Hartford Plaza
Hartford, CT 06155
Telephone: (860) 547-8632
maurice.oshea@thehartford.com

**Also For Hartford:**

Scott Schechter
Kaufman Borgeest & Ryan LLP
200 Summit Lake Drive
Valhalla, NY 10595
Telephone: (914) 449-1055
sschechter@kbrlaw.com

## XIV.  MISCELLANEOUS

1.   This Agreement was reviewed by independent legal counsel for the Trustee and Hartford before it was signed.  The Trustee and Hartford each (i) entered into this Agreement after consulting with counsel and (ii) have a full understanding of the contents and consequences of this Agreement.

2.   The Trustee and Hartford each acknowledge that no Party, nor any corporate affiliate of any of them, has been unduly pressured to accept this Agreement.  No promise or inducement which is not herein expressed has been made to any Party or corporate affiliate of any Party.

3.   In executing this Agreement, the Trustee and Hartford acknowledge that they are not relying, nor have they relied, upon any statement or representation made by or on behalf of the other Party, or by any agent, attorney, or employee of the other Party, concerning the Hartford Policy, the disputes surrounding the coverage (if

any) provided by the Hartford Policy, the Bankruptcy Cases, the Released Claims, or this Agreement, other than the representations and warranties set forth herein.

4.    The invalidity or unenforceability of any particular provision in this Agreement shall not affect the validity or enforceability of any other provision in this Agreement; provided, however, that the provisions in this Agreement regarding the Settlement Payment, V.1, V.2, V.3, VII, and the effectiveness of the releases shall not be severable from this Agreement.

5.    The Parties agree to do such further acts and execute such further documents as they agree may be necessary or desirable to carry out the intent and purpose of this Agreement.

6.    Each Party expressly agrees that it shall bear its own costs and attorneys' fees, if any, with respect to the drafting and negotiation of this Agreement.

7.    By executing this Agreement, the Trustee expressly represents, warrants, and affirms that he has not made, and will not in the future make, any assignment or transfer of any claim against Hartford released by this Agreement to any Person.

8.    Nothing in this Agreement, or any actions taken by the Parties in connection with the negotiation and execution of this Agreement, constitutes an admission or concession by any Party on any issue, including the alleged existence of coverage for any claim or matter under the Hartford Policy.

9.    The Bankruptcy Court shall retain jurisdiction to hear and determine all matters, claims, rights, or disputes arising from or related to this Agreement.

**IN WITNESS WHEREOF**, this Agreement has been read and signed by the duly authorized representatives of the Parties on the dates set forth below.

**TRUSTEE**

Dated: ___2/14/23___, 2023      By: ___Jeoffrey L. Burtch, Trustee___

Jeoffrey L. Burtch, solely in his capacity as the Chapter 7 trustee for the Prodigy Debtors

**HARTFORD ACCIDENT AND INDEMNITY COMPANY**

Dated: ___February 14___, 2023      By: ___Lauren Levy___

NAME: Lauren Levy
TITLE:  Technical Claims Officer