# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> Prodigy Network, LLC, *et al.*, <br><br> Debtors. | Chapter 7 <br><br> Case No. 21-10622 (JTD) <br><br> **Re: Docket Nos. 190 and 207** |

**DECLARATION OF CHAPTER 7 TRUSTEE JEOFFREY L. BURTCH IN SUPPORT OF TRUSTEE'S MOTION FOR ODER (I) APPROVING SETTLEMENT AGREEMENTS PURSUANT TO RULE 9019; (II) APPROVING SALE OF INSURANCE POLICY TO CARRIER; AND (III) GRANTING RELATED RELIEF**

I, Jeoffrey L. Burtch, the duly appointed Chapter 7 trustee of the above-captioned matter, hereby declare as follows:

1. I submit this Declaration in support of the Trustee's motion for: (a) approval of a settlement agreement (the "GA Settlement Agreement") with Great American Insurance Company ("Great American") and for approval of a sale of the insurance policy to Great American; (b) approval of a settlement agreement (the "Capkanis Settlement Agreement," and, together with the GA Settlement Agreement, the "Settlement Agreements") with Emily Capkanis ("Ms. Capkanis"); and (c) related relief (the "Motion") (D.I. 190).

2. Under the material terms of the Settlement Agreements, the estate of Debtor Prodigy Network LLC ("Prodigy Network") will receive $3,164,500, of which a net benefit of $3,000,000 will be retained by the estate and $164,500 will be conveyed to Ms. Capkanis.

3. The Settlement Agreements resolve not only the estates' claims under an insurance policy issued by Great American (the "GA Policy") covering claims against the Debtors' directors, officers, general partners, managers, and equivalent executives or employees (collectively, the "Directors and Officers"), but also claims that had been asserted by Ms. Capkanis, a former

1

employee, which Ms. Capkanis maintained were covered by the Policy.

4. In conjunction with the Settlement, I also reached a settlement with The Hartford Accident and Indemnity Company ("Hartford") (the "Hartford Settlement"), under which the Prodigy Network estate will be paid $87,500. Approval of the Hartford Settlement is being sought under a separate motion (the "Hartford Motion") also set for hearing on March 21, 2023 (D.I. 207).

5. The GA Settlement, the Capkanis Settlement, and the Hartford Settlement should be approved together. Each of the three settlements provides significant value to the estates and are reasonable based upon my experience and judgment.

**Reasonableness of Resolution of D&O Claims**

6. In my opinion, the GA Settlement Agreement provides significant value to the estates and should be approved.

7. The GA Policy provides coverage for certain claims against, among others, the Directors and Officers and the Debtors, for liability arising out of certain specified acts or omissions, as well as costs of defense.

8. Coverage for all losses (including costs of defense) under the GA Policy is limited to $5 million.

9. Upon information and belief, prior to the Petition Date, Great American had advanced approximately $250,000.00 in defense costs, thereby reducing the remaining coverage under the GA Policy to approximately $4.75 million.

10. Absent a settlement of these claims, I would have to engage in costly and time-consuming litigation of claims against the Directors and Officers (the "D&O Claims"), while also potentially having to defend against Ms. Capkanis's claims (the "Capkanis Claims").

11. The costs of litigating the D&O Claims and the Capkanis Claims would be

substantial, and would therefore significantly reduce the net recovery that might be realized under the GA Policy through payment of costs of defense.

12. The Debtors were part of a large corporate structure (the "Prodigy Enterprise") that was involved in various real estate development projects and related ventures. To finance many of these projects, the Debtors raised capital through a crowdfunding platform, soliciting investments from individuals in the United States and abroad.

13. Substantially all of the Debtors' operations and projects were primarily controlled by Rodrigo Niño until his death in May 2020. Upon information and belief, other individuals who participated in management included:[1]

- Brian Newman, Vice President of Business development from March 2012 until April 2019, and who worked on strategic planning and efforts to expand business into new markets;

- Carey Fieldcamp, Chief Financial Officer from approximately January 2019 until mid-2020;

- Vincent Mikolay, Chief Operating Officer from late 2017 until late 2018;

- Leonard Chinchay, Vice President of Client Relations from the founding of the enterprise in approximately 2013 until June 2019;

- Bill Garcia, Chief Operations Officer from approximately 2015 until 2017;

- Alejandra Rincon, Vice President of Operations from December 2017 to February 2019, Business Development Director from June 2016 until December 2017, and Marking Director from June 2015 to June 2016; and

- Juanita Galvis, the separated spouse of Mr. Niño, who assumed control of Prodigy Network LLC and several other wholly-owned entities after Mr. Niño's death

14. On or about September 10, 2021, I, through counsel, gave Great American notice

---

[1] Upon information and belief, Debtor Prodigy Network, LLC ("Prodigy Network") generally served as manager of the entities within the Prodigy Enterprise, either formally or *de facto*, and the leadership team of Prodigy Network served also as the leadership team of the Prodigy Enterprise. Unless otherwise indicated, references to the titles of the Directors and Officers are to their roles with Prodigy Network.

3

of circumstances that there may be grounds to assert claims under the GA Policy. Great American and I, through counsel, thereafter began discussions in an effort to reach a consensual settlement of the estates' covered claims.

15. After extensive communications regarding potential claims and defenses, the parties – the Trustee, Great American, and Hartford – agreed to participate in mediation. The mediation was held on May 24, 2022, with a very experienced JAMS mediator, Peter Woodin, as mediator.

16. No resolution was reached at the conclusion of the mediation, but settlement negotiations continued, and by late July 2022, Great American and I had reached agreement on the material terms of a comprehensive resolution of claims by and among the Trustee, Great American, and Ms. Capkanis.

17. Great American unequivocally stated that any settlement would have to fully release it from any further liability under the GA Policy.

18. Because Capkanis had stated an intention to pursue direct recovery from the GA Policy, settlement of the Capkanis Claims was necessarily a condition of the settlement with Great American.

19. With respect to the Great American Settlement Agreement, while I believe the D&O Claims may have merit and that damages may exceed the total amount of coverage remaining under the Policy, there is no question that litigation of those claims would be difficult and costly, and there can be no certainty that I would prevail. Further, the litigation could drag on for years, significantly delaying distributions to stakeholders.

20. In general, claims of the sort at issue are typically very fact intensive and complex, and therefore expensive to prepare and litigate. In the present case, it is reasonable to believe that

litigation would be particularly difficult. Among other things, the most significant D&O Claims involve Rodrigo Niño's conduct as the party primarily responsible for overall management of the Prodigy Enterprise. Because Mr. Niño is deceased, collection and presentation of evidence would be more complicated than in a typical case.

21. Furthermore, in evaluating any proposed settlement, it is critical to bear in mind that the GA Policy is a "wasting" policy, meaning that it covers costs of defense, and those costs reduce available coverage. If I were required to pursue the D&O Claims in litigation, a significant number of the Directors and Officers might be sued. It is likely that conflicts or potential conflicts would exist among the defendants, requiring the engagement of multiple defense counsel and rapidly eroding the GA Policy limits. Accordingly, even if I were to ultimately prevail in litigation, the Estates would not only bear the costs of prosecuting the action(s), their potential recovery would be reduced by all costs of defense, which would undoubtedly be considerable.

22. Moreover, in the absence of recovery from available insurance, it is likely that I would experience significant difficulties enforcing any judgments that might be entered on account of the D&O Claims. The Directors and Officers are, obviously, all individuals, and there are invariably complications in collecting from natural persons.

23. Litigation involving claims based on breach of duty by directors and officers is expensive, complicated, and time-consuming. The GA Settlement avoids these problems in favor of a prompt and efficient resolution without the need to expend further resources, much to the benefit of the estates.

**Reasonableness of Capkanis Settlement**

24. Pursuant to the Capkanis Settlement Agreement, Ms. Capkanis will receive the sum of $164,500.00 (the "Capkanis Settlement Payment"), from the total GA Settlement amount

preliminarily received by Prodigy Network.

25. The Capkanis Settlement is a necessary component of the GA Settlement. The GA Settlement Agreement cannot be approved without simultaneous approval of the Capkanis Settlement, because Great American is unwilling to settle with the Trustee alone, in the absence of a release of claims against the GA Policy.

26. The Settlement Agreements are fair and equitable in my view. Ms. Capkanis has distinct standing due to her direct pre-petition claims against Prodigy Network that resulted in a default judgment. As a result of this default judgment, she at least arguably had standing to pursue direct claims against the GA Policy.

27. Moreover, Ms. Capkanis's position threatened to impede my ability to resolve claims with Great American, and it is therefore beneficial to the estates for a modest settlement to be reached with Ms. Capkanis directly in order to facilitate the settlement with Great American.

28. The Capkanis Settlement Agreement saves significant time and expense that would otherwise be incurred in litigation with Ms. Capkanis over her standing to pursue direct claims under the GA Policy.

**Objections to the GA Motion**

29. On November 11, 2022, an individual creditor, Matias Valentin Castellano, submitted an objection to this Motion (D.I. 193-1).

30. He argues that the Capkanis Settlement Agreement is unfair to other unsecured creditors. However, as set forth above, the Capkanis Settlement Agreement was a necessary precondition of Great American's willingness to resolve claims with Prodigy Network. Under these circumstances, I determined that a resolution with Great American that included a modest settlement payment to Ms. Capkanis was in the best interests of the estates.

31. On December 2, 2022, Winston & Strawn LLP ("Winston"), a law firm that had represented some Debtors pre-petition, also submitted an objection to this Motion.

32. Winston contends that I could have obtained a better outcome on this settlement with Great American. Winston also contends that they should be entitled to priority payment under the Great American policy. However, as set forth above, I reached the GA Settlement after formal mediation and months of informal negotiations with Great American, and I believe I achieved the best result available under these circumstances. Further, after consultation with my counsel, I am not aware of facts or law that would establish Winston as anything other than a general unsecured creditor.

**Hartford Settlement**

33. Subsequent to the filing of the Motion, I re-engaged in negotiations with counsel for Hartford. On February 15, 2023, I filed a separate motion for approval of a settlement with Hartford (D.I. 207) (the "Hartford Motion").

34. No objections were filed regarding the Hartford Motion. The Hartford Motion is also set for hearing on March 21, 2023.

35. Under the terms of the proposed order granting the Hartford Motion, except for claims under Chapter 5 of the Bankruptcy Code, all claims against the Directors and Officers will be released. The proposed order includes a separate provision for Shorewood Real Estate Group ("Shorewood") and certain affiliated individuals and entities of Shorewood, in resolution of an informal objection from Shorewood to the GA Motion. As a result of this provision, Shorewood has not presented an objection to the Hartford Motion nor to the GA Motion.

Pursuant to 28 U.S.C. §1746, I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 17TH day of March, 2023.

_____
Jeoffrey L. Burtch
Chapter 7 Trustee